Robinson, J.
 

 George K. Browning was indicted for embezzlement, at the January term, 1927, of the court of common pleas of Muskingum county, by a grand jury of nine men and six women summoned and impaneled under authority of Section 13568, General Code. The regular grand jury of Muskingum county was discharged on January 6, 1927, and a “new grand jury” was summoned on January 24, 1927.
 

 Section 13568, General Code, provides: “After the discharge of the grand jury, the court, when necessary, may order the sheriff to call together a new grand jury, from the bystanders or neighboring citizens, of fifteen good and lawful men having the qualifications of grand jurors, who shall be returned and sworn, and proceed in the manner provided by law.” The court ordered that the “sheriff shall call together a new grand jury from the bystanders and neighboring citizens of fifteen good and lawful men and women.”
 

 A motion to quash the indictment was filed by the defendant, which motion was overruled.
 

 This section of the General Code (66 Ohio Laws, 299) was enacted long prior to the adoption of the
 
 *64
 
 Nineteenth Amendment to the Constitution of the United States and Article Y, Section 1, of the Constitution of Ohio, as amended November 6,1923. The same Legislature that enacted Section 13568 enacted Section 12368, General Code: “In the interpretation of part fourth, the words * * * in the masculine gender include the feminine and neuter genders.” Section 13568, General Code, was then and is now included in “part fourth” of the Code. However, we are of opinion that the adoption of Section 12368, General Code, has no significance in the interpretation of the word “men” as used in Section 13568, since the Legislature at the time of the enactment could not have contemplated the inclusion of women in the jury class. At that time the duty of jury service was imposed only upon men, and the words “jury” and “jurors” were understood to contemplate men only, and the Legislature undoubtedly did not then contemplate a jury composed of women, or partly of women.
 

 The Nineteenth Amendment to the Constitution of the United States prohibited any state from denying to women the right to vote. It did not directly or by inference prohibit the states from imposing jury service on men only. Article Y, Section 1, of the Constitution of Ohio, provides: “Every citizen of the United States, * * * who shall have been a resident of the state one year next preceding the election, and of the county, township or ward, in which he resides, such time as may be provided by law, shall have the qualifications of an elector, .and-be entitled to vote at all elections.” This provision in and of itself neither imposed jury service upon any one nor prohibited the Legislature from impos
 
 *65
 
 ing it upon persons of a designated class and exempting persons'of another class therefrom. Neither was adopted for the purpose of imposing jury service upon women. The duty to serve as jurors devolved upon women in Ohio by virtue of the fact that they had become electors, and, under the general provisions of our statutes imposing jury service upon “judicious and discreet persons, having the qualifications of electors,” they fell within the class of persons upon whom the duty had already been imposed, and the imposition of the duty arose, with-' out additional legislation, out of the inclusion of women in the class from which jury service had theretofore been required by statute.
 

 In this connection it may be said of the general statutes defining qualifications of jurors that at the time of enactment they did not require jury service of women, and that it was not, and could not have been, within the contemplation of the Legislature, in the enactment of them, to impose such service upon women; that, on the other hand, it was the purpose of the Legislature at that time to impose jury service upon a class which it in recent years has described as “judicious and discreet persons having the qualifications of electors,” “persons, resident electors,” and always has so described as to designate electors and none others, and, since there were at that time no electors other than men, to impose the duty only upon men.
 

 When, therefore, by the amendment to the federal Constitution and the amendment to the state Constitution, women were afforded the privilege of voting at all elections, they became members of the class which the Legislature had designated as sub
 
 *66
 
 jéct to jury service, and, by virtue of tbeir admission to the class, the duty of jury service devolved upon them.
 

 With respect to the provisions of Section 13568, General Code, the Legislature, instead of using the word “electors,” used the word “men”; but it must be kept in mind that, notwithstanding the fact that at the time of the enactment of that section the Legislature undoubtedly did not contemplate requiring jury service of women, the purpose of the enactment of that section was not to provide an additional class from which jury service might be required, but was to provide an additional mode of selection of jurors from the same class. And since the class included, and always had included, electors only, and all electors were men, it used the word ‘-‘men” in the same sense as it had theretofore used a word or Avords indicating electors, arid did not use the Avord-“men” in a specific sense, differentiating between men and women, but in a generic sense, indicating the elector class, upon the members of which jury service had theretofore by statute been imposed.
 

 We find no error in the manner of summoning the “new grand jury.”
 

 In the formation of the new grand jury there was summoned one James Simpson, who served as a grand juror in presenting the indictment here under consideration. A plea in abatement was filed, in which it was alleged that Simpson, on November 14, 1890, was indicted by the grand jury of Westmoreland county, Pennsylvania, in which indictment he was charged, in the first count, Avith making an assault upon one George H. Moore, and beating,
 
 *67
 
 wounding, ill-treating, and otherwise wronging him; in the second count, with mating an assault and unlawfully and maliciously inflicting grievous bodily harm upon the said George H. Moore; and, in the third count, with feloniously, willfully, and with malice aforethought striking the said George H. Moore with a club or oak picket, with intent * * * to kill and murder; ’ ’ that the third count of the indictment was nollied and he pleaded guilty to the first and second counts, and was sentenced to serve a term of two years and three months at solitary confinement in the Western Penitentiary of Pennsylvania; and that he never received a general pardon from the governor of Pennsylvania.
 

 It is claimed that the offense to which he pleaded guilty and for which he was sentenced was a felony under the laws of the state of Ohio. The section of the statutes of Pennsylvania (Pa. St., 1920) under which the juror was sentenced was shown to read as follows: “Sec. 7685. If any person shall unlawfully and maliciously inflict upon another person, either with or without any weapon or instrument, any grievous bodily harm, or unlawfully cut, stab or wound any other person, every such person shall be guilty of a misdemeanor, and being convicted thereof, shall be sentenced to pay a fine not exceeding one thousand dollars, and to an imprisonment, either at labor, by separate or solitary confinement, or to simple imprisonment, not exceeding three years.”
 

 There is no significance in the fact that in Pennsylvania the offense is denominated a misdemeanor, since it carries with it a penalty of imprisonment in a state penitentiary for a period not exceeding three
 
 *68
 
 years. The significant part of the Pennsylvania statute is that part which authorizes the imposing of a penalty of imprisonment in the state penitentiary.
 

 It is urged that the conviction in the state of Pennsylvania was for an offense which, if it had been committed in the state of Ohio, would have required a conviction either under Section 12416 or Section 12421, General Code of Ohio. Section 12416 provides, “Whoever, with malicious intent to maim or disfigure, cuts, bites, * * * or assaults another with a dangerous instrument, shall be imprisoned,” etc.; and Section 12421, General Code, provides, “Whoever assaults‘another with intent to kill * * * shall be imprisoned,” etc.
 

 The third count in the indictment against the juror Simpson was nollied. It was in that count, and that count only, that he was charged with striking George H. Moore “with a club or oak picket, with intent * * * to kill and murder.” No inference may be drawn against the juror from the averments of the third count of that indictment. The status of the juror must be measured by the charges in the first and second counts, to which he pleaded, and upon which he was sentenced.
 

 It is urged that the indictment contained the essential elements of a felony under Section 12416 or Section 12421, Ohio General Code. Unaided by the averments of the third count, the indictment lacked the essential element of malicious intent or a dangerous weapon, constituting the felony defined by Section 12416, and lacked the essential element of intent to kill, constituting the felony defined by Section 12421. Under the allegations of counts 1
 
 *69
 
 and 2 of the indictment, had the venue been within this state, the juror could not have been sentenced to the Ohio penitentiary. It therefore does not appear by the records of the proceedings upon the plea in abatement that the juror Simpson had been convicted of a crime which would be denominated a felony in this state.
 

 The indictment of the defendant Browning contained 13 counts. The first count charged the embezzlement of 12 definite sums of money on 11 different dates, which sums and dates were fully itemized. The sum of all the items charged in the first count was $14,864.42. The other 12 counts, numbered consecutively from 2 to 13, inclusive, were for the same items contained in-the first count, stated separately, one item in each count, and the sum of the 12 items contained in the 12 counts, 2 to 13, was $14,864.42. During the trial, items 7 and 8 of the first count, and the corresponding counts, 8 and 9, were withdrawn from the consideration of the jury. A verdict was returned, finding the defendant guilty as charged in the first count and not guilty as charged in the remaining 12 counts. A motion for new trial was overruled, and sentence of imprisonment in the penitentiary imposed.
 

 There is no controversy between the state and the defendant over the fact that the items charged as embezzled in the first count were the same items charged as embezzled in the 12 succeeding counts, and that their identity is apparent upon the face of the indictment. The jury by its verdict fixed the amount of the embezzlement as the exact sum of the items charged in the first count, less the items charged in items 7 and 8 of that count, withdrawn
 
 *70
 
 from the jury, which sum, less counts 8 and 9, withdrawn from the jury, was the exact sum of the items charged in the remaining counts.
 

 It is contended upon the part of the defendant that the jury found him guilty of embezzling all the items contained in the first count, except items 7 and 8, and separately stated in the remaining 12 counts, and at the same time in the same verdict found him not guilty of embezzling any of such items.
 

 It must be conceded that, had the first count been eliminated from the indictment, the verdict of not guilty as to the remaining 12 counts would be a complete bar to a future prosecution charging the same items in a single count. The jury by its verdict in effect said: The defendant is guilty of embezzling all the items charged in the indictment, but is not guilty of embezzling any one of the items charged in the indictment. It may be stated, in passing, although we do not regard it as significant, that the court in his general charge instructed the jury: ‘ ‘ Should you find, under the rules of law I have given you, that the defendant is guilty as charged in the first count in the indictment, then you should also find him not guilty of each and all of the other counts of the indictment, because the first count includes in its items the items contained in the other counts of the indictment. ’ ’ The jury apparently followed the instruction of the court in the wording of its verdict. If, however, the charge of the court was erroneous in that respect, the error of the court would not cure the error of the jury, if it be an error.
 

 If the jury is required to consider the indictment as courts and jurors are wont to consider contracts, by their four corners, and if the court is required
 
 *71
 
 to consider the verdict in the same manner, then it must he conceded that the verdict is inconsistent, and the finding both of guilty and not guilty wholly irreconcilable. The question whether such a verdict is void for inconsistency and repugnancy has been much debated and variously determined in other jurisdictions. In the case of
 
 Boyle
 
 v.
 
 United States
 
 (C. C. A.), 22 F.(2d), 547, at page 548, appears the statement that in the Second, Sixth, and Seventh Circuits, “where a jury convicts upon one count and acquits upon another, the conviction will stand, though there is no rational way to reconcile the two conflicting conclusions;” that in the Third and Eighth Circuits “the conviction will not be allowed to stand, unless the verdict of conviction is supported by evidence other than the facts pleaded in support of the counts upon which acquittal has been had.”
 

 However, without attempting to determine wherein the weight of authority in other jurisdictions lies, the question has been determined in this state by this court in the case of
 
 Griffin
 
 v.
 
 State,
 
 18 Ohio St., 438: “A verdict will not be set aside as inconsistent, or uncertain, because it finds differently as to counts in which there is no material difference.” The discussion of the subject in the opinion indicates that it is the theory of this court that each count of an indictment charges a complete offense; vthat the separate counts of an indictment are not interdependent, but are, and necessarily must be, each complete in itself, and that in determining the effect of a verdict that responds by designation to a given count the other counts of the indictment will be ignored, and the response of the jury to such other
 
 *72
 
 counts likewise ignored; that an inconsistency does not arise, unless it arises out of inconsistent responses to the same count.
 

 The trial court followed the law as announced by this court, and the jury will be presumed to have followed the law as announced by the trial court.
 

 The other questions presented by the defendant involve the weight of the evidence and will not be reviewed here.
 

 Judgment affirmed.
 

 Kiniiade, Jones, Matthias, Day and Allen, JJ., concur.
 

 Marshall, C. J., not participating.