OPINION
Heather Miller was charged with improper operation, a violation of City of Dayton R.C.G.O. § 71.18, and "hit/skip," a violation of R.C. 4549.02. The charges were tried to the bench. At the end of the prosecution's case-in-chief, the judge granted Miller's motion for judgment of acquittal as it pertained to improper operation and overruled the motion as it pertained to hit/skip. At the close of the evidence, the judge found Miller guilty of hit/skip. The judge imposed a sentence, fine, and costs, and suspended all but the costs. On appeal, Miller advances two assignments of error and three issues for review as follows:
FIRST ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S CRIMINAL RULE 29 MOTION AT THE CONCLUSION OF THE STATE'S CASE.
ISSUE PRESENTED:
 DOES THE TRIAL COURT'S GRANTING OF APPELLANT'S CRIMINAL RULE 29 MOTION AS TO THE COMPANION IMPROPER OPERATION CHARGE AFFECT THE HIT AND RUN CHARGE.
The prosecution version of the incident giving rise to the charges was that on December 11, 1997, Miller, the driver of an Oldsmobile Ciera, struck the rear of an unoccupied Dodge Aries as she pulled in and parked behind the Dodge. The owner of the Dodge, Michael Lindsey, and his roommate, Arnold Dixon, testified that they observed the collision from their apartment window. When Dixon confronted Miller and told her she had struck Lindsey's car, Miller denied doing so and left the scene without providing the information required by R.C. 4549.02. Lindsey testified that the estimated cost of a new rear bumper was $200. Miller and her witnesses vehemently denied that Miller's car struck Lindsey's parked car, and Miller claimed she thus had no knowledge of the alleged collision.
Miller contends in her first assignment that the judge's granting a judgment of acquittal on the improper operation charge necessarily meant he found insufficient evidence of a collision. We do not agree. Improper operation under R.C.G.O. § 71.18 is defined as operation of a vehicle "without due regard for the safety of persons or property." Because both Lindsey and Dixon testified that Miller was driving at a high rate of speed prior to pulling in behind Lindsey's stationary Dodge, Miller argues that the judge's granting her judgment of acquittal on the improper operation charge can only mean he disbelieved the testimony of Lindsey and Dixon that she collided with Dixon's car because their description of the collision was consistent only with Miller's having driven without due regard for the property of others. Hence, the argument concludes, if the judge disbelieved Lindsey and Dixon that Miller had struck Lindsey's car, she was also entitled to judgment of acquittal on the hit/skip charge.
Miller's argument ignores the prerogative of the trial judge to believe part but not all of the testimony of a witness. Although the judge provides us with no insight as to why he granted judgment of acquittal on the improper operation charge but not on the hit/skip charge, we conclude that the judge most likely believed Lindsey's and Dixon's testimony that Miller struck Lindsey's car, but disbelieved their testimony as to Miller's speed at the time of the collision. This assessment of the testimony would have been supported by the testimony of Lindsey and Dixon as to the collision, and the evidence of relatively slight damage to the rear of Lindsey's car. Our common experience has taught us that even careful drivers occasionally strike cars in front of or behind them when parking on city streets. Operating "without due regard for the safety of property" connotes a degree of carelessness that may not accompany the accidental striking of another car while parking on a city street. Thus, we conclude that the judge did not err in denying judgment of acquittal on the hit/skip charge after granting judgment of acquittal on the improper operation charge.
Although we have gone to some length to harmonize the rulings of the judge on Miller's motions for judgment of acquittal, the possible inconsistency between the two rulings is not fatal to Miller's conviction of hit/skip. The longstanding rule in Ohio was stated in Browning v. State (1929), 120 O.S. 62, syllabus, para. 4:
 The several counts of an indictment containing more than one count are not interdependent. A verdict responding to a designated count will be construed in the light of the count designated, and no other. An inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count. (Griffin v. State, 18 Ohio St., 438, approved and followed.)
Browning was recently approved and followed by the supreme court in State v. Lovejoy (1997), 79 Ohio St.3d 440.
The first assignment is overruled.
SECOND ASSIGNMENT OF ERROR
 HEATHER MILLER'S CONVICTION OF HIT AND RUN IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR ACQUITTAL AT THE CLOSE OF TRIAL.
ISSUE PRESENTED:
 WHETHER THERE WAS SUFFICIENT EVIDENCE THAT A COLLISION, OR HIT, HAD OCCURRED WHEN THE POLICE INVESTIGATION INDICATED NO EVIDENCE OF A COLLISION; COMPLAINANTS GAVE CONFLICTING STORIES OF ALLEGED ACCIDENT; THERE WAS NO PHYSICAL EVIDENCE OF ANY COLLISION; AND ALL OTHER WITNESSES INDICATED THERE WAS NO COLLISION.
ISSUE PRESENTED:
 DID THE TRIAL COURT ERROR [sic] WHEN IT FAILED TO GRANT APPELLANT'S MOTION FOR ACQUITTAL WHEN THERE WAS NO EVIDENCE, EVEN IF THERE WAS A COLLISION, THAT HEATHER MILLER KNEW OF THE COLLISION.
Miller first argues under this assignment that there was insufficient evidence of collision, and that the evidence of collision was against the manifest weight of the evidence.
Detective Mark Davis testified that he contacted Miller and examined her Oldsmobile Ciera December 26, 1997, fifteen days after the alleged collision. Det. Davis testified that the front end plastic license plate bracket was cracked, that there was a bracket impression on the vinyl strip behind the bracket, and that Miller had no explanation for the bracket damage, although she denied striking Lindsey's car. Lindsey testified that after he observed the collision, he examined his car and observed "two cracks (in the rear bumper) that were in the same position . . . the same uniform position of where hers was." Dixon testified to observing the collision and thereafter the two cars: "She had knocked it in two places. It was a perfect shape of her license plate." Refuting this testimony were the denials of Miller and her two passengers that she struck Lindsey's car, and Miller's testimony that the damage to her license plate bracket occurred prior to December 11.
The evidence as to the fact of collision was certainly sufficient to survive a Crim.R. 29 motion for acquittal after the close of the evidence. As to whether the evidence that there was a collision was against the manifest weight of the evidence, we decline to so find. The judge was confronted with a classic credibility issue, and we must be deferential to his resolution of that issue. Although controverted by Miller and her passengers, and despite some inconsistency between the testimony of Lindsey and Dixon, there was substantial evidence that Miller struck Lindsey's car, and the judge did not clearly lose his way in so finding.
Although Detective Davis did not attempt to render an opinion that Miller's car had struck Lindsey's, we think Miller's characterization of his testimony as indicating that her car did not strike Lindsey's is inaccurate. The following exchange between defense counsel and Det. Davis gives rise to her characterization of his testimony:
 Q. And did you ever do an investigation of the Dodge Aires that was involved in this alleged accident?
 A. No, I did not see it. The officer who took the report was the one who examined that vehicle.
Q. Do you know what color it was?
A. Not without referring to the report.
 Q. So you really did nothing to compare damage between Ms. Miller's vehicle and the other vehicle?
A. There was nothing to compare.
 Q. There was nothing to compare because there was no indication of trace evidence from the black Dodge Aires that was left upon Ms. Miller's vehicle; is that right?
 A. There was no sign where any foreign paint or anything had been exchanged between the two vehicles.
 Q. In fact, it would indicate the exact opposite, since you found white paint?
A. Yes.
MR. CICERO: I have nothing further.
We think a fairer characterization of Davis' testimony is that he simply couldn't say whether Miller's car struck Lindsey's.
Miller next argues that there was insufficient evidence that she knew there had been a collision — knowledge of a collision being an essential element of a hit/skip offense — and that evidence of her knowledge of a collision, if any, was against the manifest weight of the evidence.
We disagree. If the judge found that Miller struck Lindsey's car, which he undoubtedly did, he could also infer that she was aware of the collision, despite her denials. Secondly, the evidence is not in dispute that Dixon confronted Miller and told her she had struck the car she had parked behind. In State v.Maiorielle (1992), 73 Ohio App.3d 350, the court held that the jury could find that defendant knew of damage to the other vehicle involved in a two vehicle collision where the only evidence of defendant's knowledge was the other driver's testimony that he had told defendant about the damage. In our judgment, there was sufficient evidence that Miller knew there had been a collision, and the finding to that effect was not against the manifest weight of the evidence.
The second assignment is overruled.
The judgment will be affirmed.
GRADY, P.J. and YOUNG, J., concur.
Copies mailed to:
Mary E. Welsh
Arvin S. Miller
Hon. Bill C. Littlejohn