JOURNAL ENTRY AND OPINION
Stephen Sanders appeals from a judgment of the common pleas court entered pursuant to a jury verdict finding him guilty of two counts of kidnaping and one count of aggravated robbery. For the reasons set forth below, the judgment of the trial court is affirmed in part, reversed in part, and remanded.
The record before us reveals that on April 13, 1998, Sanders, along with Damien Cleveland and Gregory Martin, planned to kidnap and rob Firas Essa, the owner of Page One, and his girlfriend, Angela Jelovic. On that night, the three men, wearing ski masks and several layers of clothing, drove to the Page One location in a car owned by Sanders' father, Cleveland Police Detective Clarence Sanders. Upon arriving at Page One, Sanders and Cleveland hid behind a dumpster and waited for Essa and Jelovic, while Martin remained in the car.
As Essa and Jelovic exited the store, Cleveland and Sanders approached them at gun point and ordered them to get down on their knees. Essa then offered to relinquish the keys to his car, and his wallet, in exchange for their release, but the men rejected that offer. Using a pair of handcuffs which belonged to Detective Sanders, Cleveland handcuffed Essa while Sanders attempted to duct tape Jelovic's hands behind her back. When Sanders placed his gun on the ground, Essa got control of it, told Jelovic to run, and attempted to shoot Cleveland. The gun, however, did not discharge because it did not have a bullet in the chamber; because he had been handcuffed, Essa could not load the weapon. Sanders and Cleveland then attacked Essa in an attempt to regain control of the gun. Eventually, Sanders and Cleveland abandoned the plan and fled, discarding their clothing as they ran from the scene. In the meantime, Jelovic reached the Hunan Restaurant and Essa met her there, still in handcuffs. At that point, John Wang, who worked at the restaurant, called police.
The record further reveals that Cleveland, who had shed a layer of "robbery clothing", met Martin, abandoned Sanders' car on Clare Avenue and walked back to 21318 Clare where the police later arrested them.
On May 18, 1998, the grand jury indicted Sanders on two counts of kidnaping and two counts of aggravated robbery, with firearm specifications. Police arrested him in July, 1998, and the court began his jury trial on September 18, 1998. In its case in chief, the state called Essa, Jelovic, Damien Cleveland, Officer Mackiewicz, Kimberly Billingsley, Detective Clarence Sanders, Ronald Byrd, and Le'Shanna Byrd. The defense rested without calling any witnesses.
On September 25, 1998, the jury returned its verdict finding Sanders guilty of kidnaping Firas Essa and Angela Jelovic and guilty of the aggravated robbery of Jelovic. Before imposing sentence, the court allowed the victims and defense counsel to speak and then, before hearing from Sanders, placed him under oath, and posed its own questions to him regarding his whereabouts at the time of the incident, and his participation in it, despite the fact that Sanders had chosen not to testify at trial. On September 28, 1998, the court sentenced Sanders to five years as to each count to be served consecutively, and imposed fines totaling $30,000.00.
Sanders now appeals and sets forth nineteen assignments of error for our review.
 I. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT ADMITTED A STATEMENT MADE BY A NON-TESTIFYING CO-DEFENDANT.
Sanders maintains that the court erred when it allowed Officer Mackiewicz to testify about the statements made by Martin to the Maple Heights Police Department. He alleges that Martin's statements claiming innocence are inadmissible hearsay.
The state, however, maintains that Martin's statements are admissible because statements made by a co-conspirator are non-hearsay.
The issue, then, presented for our review concerns whether the court erred when it admitted Martin's statements through the testimony of Officer Mackiewicz.
Evid.R. 801(D)(2)(e) states:
 A statement is not hearsay if * * * the statement is offered against a party and is * * * a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy.
Further, the court in State v. Carter (1995), 72 Ohio St.3d 545, stated in paragraph three of the syllabus:
 The statement of a co-conspirator is not admissible pursuant to Evid.R. 801(D)(2)(e) until the proponent of the statement has made a prima facie showing of the existence of the conspiracy by independent proof.
A review of the record here reveals that prior to Officer Mackiewicz's testimony, the jury had heard testimony from Kimberly Billingsley, Sanders' girlfriend, who stated that she had purchased the gun and left it in Detective Sanders' car. The jury also heard from Cleveland, a co-conspirator, who testified that he, along with Sanders and Martin, conspired to kidnap and rob Essa and Jelovic. Additionally, the jury heard the testimony of Ronald and Le'Shanna Byrd, who stated that they observed two individuals running from the scene and one suspicious driver in the same area in which the police apprehended Cleveland and Martin. Detective Sanders also testified, and stated that he owned the vehicle and the handcuffs used during the commission of these crimes.
Therefore, based on the testimony presented to the court before Officer Mackiewicz testified, it is clear that the state established that Sanders, Cleveland and Martin were co-conspirators in a scheme to commit the crimes. Thus, at the time the state elicited Officer Mackiewicz's testimony, it had made a prima facie showing of a conspiracy as required by Evid.R. 801(D)(2)(e), and pursuant to Carter, Martin's testimony is admissible. Accordingly, the court did not err when it admitted Martin's statements. Therefore, this assignment of error is overruled.
Because the second, third, fourth, fifth, sixth and seventh assignments of error all relate to a common legal issues, they will be addressed together. They state:
II.
 THE DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT AMENDED COUNT TWO OF THE INDICTMENT INVOLVING THE KIDNAPING CHARGE OF ANGELA JELOVIC.
III.
 DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS ALLOWED TO BE CONVICTED AS AN AIDER AND ABETTOR WITHOUT REQUIRING THAT HE POSSESS THE CULPABLE MENTAL STATE NEEDED FOR THE COMMISSION OF THE OFFENSE.
IV.
 DEFENDANT WAS DENIED DUE PROCESS OF LAW BY REASON OF AN UNCONSTITUTIONAL PRESUMPTION CONCERNING THE MERE ACTING TOGETHER.
V.
 DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE JURY WAS INSTRUCTED ON FLIGHT.
VI.
 DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT AMENDED THE INDICTMENT BY INSTRUCTING ON AIDING AND ABETTING WHEN THE PROSECUTOR CLAIMED DEFENDANT WAS A PRINCIPAL OFFENDER.
VII.
 DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT INSTRUCTED THE JURY CONCERNING THE PRESUMPTION OF PARTICIPATION.
Sanders maintains that the court instructed the jury that an element of kidnaping included holding Jelovic as a "shield or hostage" but alleges that the court amended the indictment against him when it added the language, "hold for ransom" in answer to a jury question. Additionally, Sanders maintains that the court erred when it instructed the jury on aiding and abetting, common purpose, flight, and the presumption of participation.
The state maintains that defense counsel never objected to the court's answer regarding the elements of kidnaping, nor to the instructions given regarding aiding and abetting, common purpose, and flight, and, therefore, Sanders cannot raise these matters on appeal.
The issue before us then concerns whether the court erred in its instructions to the jury in this case.
We begin our review with App.R. 12(A)(2), which states in pertinent part:
 The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based * * *.
Further, the court in State v. Slagle (1992), 65 Ohio St.3d 597
stated:
 An appellate court will not consider an alleged error that the complaining party did not bring to the trial court's attention at the time the alleged error is said to have occurred. * * * The appellate court must examine the error asserted by the defendant-appellant in light of all the evidence properly admitted at trial and determine whether the jury would have convicted the defendant even if the error had not occurred.
Additionally, the syllabus in State v. Underwood (1983), 3 Ohio St.3d 12, provides:
 The failure to object to a jury instruction constitutes a waiver of any claim or error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise.
A review of the record in this case reveals that the court originally instructed the jury as to the elements of kidnaping as follows:
 To remove from the place where found means to change the victim's location. This need not be for any specific distance or duration of time, or any specific manner. To restrain one of their liberty, means to limit or restrain the victim's freedom of movement. The restraint need not be for any specific duration of time, or any specific manner. To hold as a shield or hostage means to hold one for consideration or concession, payment or demand-concession, pay or demand. (Emphasis added)
When the jury submitted its question regarding the nature of the charge of kidnaping, the record reflects the court held an attorney conference on the record, advised all counsel of its proposed response and at that time, defense counsel failed to note any objection to the court's proposed answer. Thereafter, the court answered the jury question as follows:
 There are three necessary elements of the crime of kidnaping under Ohio law. One, by force, threat or deception. Two, remove another person from the place where the person is found or restrain a person of the liberty of the other person. Three, any of the following purposes: (A) Hold for ransom, or as a shield or hostage, or (B) to facilitate the commission of any felony, or flight thereafter, or (C) to terrorize or inflict serious harm on the victim or another. (Emphasis added).
Further, the record reveals the trial court carefully instructed the jury regarding aiding and abetting, including the culpable mental state necessary for commission of the crime.
The court further instructed the jury, regarding common purpose, as follows:
 When two or more persons have a common purpose to commit a crime, and one does one part, and the second the other, he's acting together, they are guilty, equally guilty, of that crime.
Finally, the court carefully instructed the jury that mere presence or acquiescence or approval is not sufficient to prove that Sanders aided and abetted Martin and Cleveland in the commission of these crimes.
In this case, we have concluded the court properly instructed the jury with respect to the elements of kidnaping. We also note defense counsel failed to object not only to the court's proposed response to the jury, but also failed to object at the time the court actually answered the question for the jury; and we note that the court specifically asked defense counsel whether there would be an objection to the state's request for an instruction regarding aiding and abetting and flight, and the defense counsel stated, "no objection." Further, we recognize the court properly instructed the jury as to the requisite culpable mental state during its instructions regarding aiding and abetting. Therefore, these assignments of error are not well taken as the alleged errors have not been properly preserved in the record and we conclude that the outcome of the trial would not have been different had the court answered the jury questions differently or omitted the instruction regarding aiding and abetting. Accordingly, these assignments of error are overruled.
 VIII. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT ANSWERED A JURY QUESTION IN AN IMPROPER MANNER.
Here, Sanders maintains that the court improperly answered in the negative when the jury asked whether it is necessary for a person to be physically at the scene of a crime at the time of its commission in order to be guilty of aiding and abetting.
The state, however, maintains that defense counsel failed to object when the court responded to the jury's question and that the response did not alter the jury instructions previously provided by the court.
The issue here, then, concerns whether the court amended its jury instructions when it answered a jury question in this case.
Here, the jury questioned whether someone had to be present at the scene of a crime in order to be guilty of aiding and abetting, and the court answered "no" to the question. Defense counsel failed to object to the court's response, and in fact the transcripts reveal that when asked by the court if defense counsel disagreed with the proposed answer, counsel stated "No, Your Honor". Therefore, based on our above analysis, we conclude that this assignment of error is not well taken.
 IX. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS CONVICTED OF AGGRAVATED ROBBERY WHEN THE JURY SPECIFICALLY FOUND THAT DEFENDANT DID NOT HAVE OR POSSESS A FIREARM.
Sanders argues the jury's verdict finding him guilty of aggravated robbery but not guilty of the firearm specification is internally inconsistent and therefore precludes a finding of guilty of aggravated robbery.
The state maintains the jury convicted Sanders based on the theory of aiding and abetting and it is not inconsistent for the jury to conclude that Sanders participated in the robbery but that he did not possess the firearm.
The issue presented for our review concerns whether Sanders can be convicted of aggravated robbery without also being convicted of the firearm specification.
In Browning v. State (1929), 120 Ohio St. 62, the court considered the issue of inconsistent verdicts, and set forth the following rule:
 A verdict will not be set aside as inconsistent, or uncertain, because it finds differently as to counts in which there is no material difference. * * * [E]ach count of an indictment charges a complete offense; that the separate counts of an indictment are not interdependent, but are, and necessarily must be, each complete in itself, and that in determining the effect of a verdict that responds by designation to a given count the other counts of the indictment will be ignored, and the response of the jury to such other counts likewise ignored; that an inconsistency does not arise, unless it arises out of inconsistent responses to the same count.
In State v. Woodson (1985), 24 Ohio App.3d 143, a case strikingly similar to the facts confronting us in the instant case, where the jury convicted the defendant of the crime of aggravated robbery but found him not guilty of the firearm specification, the court, in affirming the conviction, relied on the findings of the United States Supreme Court in Dunn v. UnitedStates (1932), 284 U.S. 390 and United States v. Powell (1984),469 U.S. 57.
The court in Dunn stated:
 [T]here is no reason to vacate respondent's conviction merely because the verdicts cannot be rationally reconciled. Respondent is given the benefit of her acquittal on the counts on which she was acquitted * * *.
Accordingly, this assignment of error is overruled.
Because Sanders' tenth, eleventh and twelfth assignments of error concern Crim.R. 29, they will be addressed together.
X.
 DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT REFUSED TO GRANT A JUDGMENT OF ACQUITTAL AS TO THE AGGRAVATED ROBBERY COUNTS.
XI.
 DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HIS MOTION FOR JUDGMENT OF ACQUITTAL WAS OVERRULED CONCERNING THE KIDNAPING OF ANGELA JELOVIC.
XII.
 DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HIS MOTION FOR JUDGMENT OF ACQUITTAL WAS OVERRULED CONCERNING THE KIDNAPING OF FIRAS ESSA.
In these assignments of error, Sanders claims that the state failed to produce sufficient evidence to convict him of aggravated robbery and kidnaping.
The state, however, maintains that viewing all the evidence in a light most favorable to the state, it is clear that it produced sufficient evidence for the jury to convict Sanders of aggravated robbery and kidnaping.
The issue, then, for our review concerns whether the state proved Sanders' guilt beyond a reasonable doubt regarding the crimes of aggravated robbery and kidnaping.
The test for sufficiency of the evidence raises a question of law to be decided by the court before the jury may receive and consider the claimed offense. The court in Jackson v. Virginia
(1979), 443 U.S. 307 stated:
 As to the claim of insufficient evidence, the test is whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weight the evidence.
The test for sufficiency thus involves viewing the probative evidence and inferences therefrom in the light most favorable to the prosecution to find all the essential elements of the offense.
In this case, the state assumes the burden to prove Sanders' guilt beyond reasonable doubt of the crimes of kidnaping and aggravated robbery. R.C. 2905.01(A) defines kidnaping as follows:
 No person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
(1) To hold for ransom, or as a shield or hostage; * * *.
Further, R.C. 2911.01 defines aggravated robbery follows:
 (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 * * * or in fleeing immediately after the attempt or offense, shall do any of the following:
 (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possess it, or use it * * *.
Additionally, R.C. 2923.02(A) defines attempt as follows:
 No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct which, if successful, would constitute or result in the offense.
In its case in chief, the state offered the testimony of Damien Cleveland, who explained that he, along with Sanders and Martin, planned to kidnap and rob Essa and Jelovic, and that on the night of the crime, the three men had a gun, duct tape and handcuffs. The state also presented the testimony of Essa and Jelovic, which described that Essa had been handcuffed and Jelovic's hands had been taped behind her back and that one of the men pointed a gun at their heads. However, Essa also testified that he offered the men the keys to his vehicle and money, but they rejected his offer and persisted in their effort to kidnap the victims.
A question has been presented regarding whether the state proved all the elements of aggravated robbery because of the rejection of the offer made by Essa to take his car keys and money; Sanders argues the state failed to prove the commission of a theft offense because nothing had been taken from Essa or Jelovic. He further argues the court erred in its ruling denying the motion for acquittal because he alleges the court stated that the theft consisted of "stealing the person", and Sanders argues theft must be of property of another. In this regard, the record reflects that Damien Cleveland testified on direct examination as follows:
 A: Me and Stephen got out, went stood behind the dumpster and waited for the man to come out the pager store.
 Q: How is it decided that you and Stephen are going to exit the vehicle?
 A: Because I couldn't drive, and Gregory, I guess he chickened out. He didn't want to do it his self.
Q: Do what?
A: Rob the pager store owner.
* * *
Q: What about the cars?
 A: Yeah, the cars, we were going to take him in the car, and Gregory was going to have to follow behind us, so a policeman don't get behind us.
Q: What kind of car did they drive?
 A: One was a Navigator. I don't know what the other one was though.
 Q: Did you know one was the Navigator before you got to the pager store?
A: No.
Q: That wasn't discussed, was it?
A: No.
* * *
Our review supports the notion that Sanders participated in a plan to rob Essa and Jelovic, and at least attempted to do so. An attempt to commit an offense occurs when an individual engages in conduct which if successful results in the commission of the crime. See R.C. 2923.02(A). Here, but for the defensive action of Essa, the participants planned to complete this crime.
Our further review of the record fails to reveal evidence that Sanders released Essa or Jelovic in a safe place unharmed; in fact, they escaped only because Essa wrestled the gun away from Sanders. Therefore, viewing the evidence in a light most favorable to the prosecution pursuant to Jackson, we conclude the state proved Sanders' guilt beyond a reasonable doubt regarding the crime of kidnaping and with respect to the crime of aggravated robbery because Cleveland's testimony supports the jury's finding regarding the elements of the crime of aggravated robbery. Accordingly, this assignment of error is not well taken.
Sanders' thirteenth, fourteenth, fifteenth, and eighteenth assignments of error concern his sentence and, therefore, they will be considered together.
XIII.
 DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS SENTENCED FOR KIDNAPING AS FELONIES OF THE FIRST DEGREE RATHER THAN FELONIES OF THE SECOND DEGREE.
XIV.
 DEFENDANT WAS UNCONSTITUTIONALLY SUBJECTED TO MULTIPLE PUNISHMENTS WHEN HE WAS SEPARATELY SENTENCED FOR AGGRAVATED ROBBERY AND KIDNAPING.
XV.
 DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS SENTENCED BY THE COURT WITHOUT THE BENEFIT OF PROPERLY CONSIDERING THE SENTENCING FACTORS.
XVIII.
 DEFENDANT WAS DENIED DUE PROCESS OF LAW AND EQUAL PROTECTION OF THE LAW WHEN HE WAS FINED BY THE COURT.
Here, Sanders claims that the court erred when it sentenced him for kidnaping as a first degree felony instead of as a second degree felony; that the sentences for the aggravated robbery and kidnaping of Angela Jelovic should have been merged; that the court failed to consider the statutory factors for imposing consecutive sentences; and that the court erred when it imposed a $30,000.00 fine.
The state maintains, however, that these assignments of error are not properly before this court because Sanders failed to seek leave to appeal his sentence and the state claims the sentence is not appealable as of right pursuant to R.C. 2953.08(C).
The issue for our review, then, concerns whether the court properly sentenced Sanders in this case.
R.C. 2953.08(C) provides, as the state argues, that an appellant may seek leave to appeal the imposition of a sentence when it is consecutive or when it exceeds the maximum prison term allowed. Consideration of such motion is discretionary with the Court of Appeals.
However, we further recognize that despite this statute which requires leave, App.R. 5(C)(2) states:
 When a criminal defendant has filed a notice of appeal pursuant to App. R. 4, the defendant may elect to incorporate in defendant's initial appellate brief an assignment of error pursuant to R.C. 2953.08(C), and this assignment of error shall be deemed to constitute a timely motion for leave to appeal pursuant to R.C. 2953.08(C)
Accordingly, the state's position is not well taken; we will consider this assignment of error as the request for leave and we will grant that request.
Regarding the claim that the court should have sentenced Sanders for kidnaping as a second degree felony, the evidence here shows that Sanders did not release his victims in a safe place, unharmed. In fact, the testimony at trial demonstrated that the victims escaped and that Essa had been injured during this incident. Therefore, we have concluded that the court properly sentenced Sanders for kidnaping as a first degree felony.
Regarding the claim that the sentences for the aggravated robbery and kidnaping of Angela Jelovic should have been merged, we do not find that these are allied offenses of similar import. Each contains different elements and the act of binding Jelovic with duct tape is wholly separate from the act of aggravated robbery. Accordingly, this position is not well taken.
Regarding the claim that the court failed to consider the statutory factors for imposing consecutive sentences, we begin by examining the courts' duty when it elects to impose consecutive sentences. Pursuant to R.C. 2929.14(E)(4), the trial court may order consecutive sentences if it finds such "service is necessary to protect the public * * * and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct * * *." The court, must also consider three additional factors and if any one of them apply, consecutive sentences are appropriate.
In this case, the record reveals that the court sought to impose consecutive sentences because it determined that Sanders is a danger and threat to the safety of the community.
However, we have concluded that the court did not engage in the analysis required by R.C. 2929.14(E)(4) and State v. Edmonson
(1999), 86 Ohio St.3d 324, because it did not address any of the factors contained in the statute. Accordingly, this assignment of error is well taken.
Regarding the claim that the court erred when it imposed a $30,000.00 fine, the record reveals that Sanders did not file an affidavit of indigency prior to sentencing, as required by R.C.2929.18(B)(1). Therefore, the court properly fined Sanders and this assignment of error is not well taken.
Assignments of error sixteen and seventeen also concern issues that arose out of the sentencing and therefore they will be addressed together.
XVI.
 DEFENDANT WAS DENIED A FAIR TRIBUNAL WHEN THE COURT ACTED AS A PROSECUTOR IN INTERROGATING THE DEFENDANT AT SENTENCING.
XVII.
 DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS VINDICTIVELY SENTENCED FOR GOING TO TRIAL.
Sanders claims that prior to imposing sentence, the trial court interrogated him regarding his involvement in the crimes for which he had been found guilty. Sanders also asserts the court imposed a harsher sentence because he chose a jury trial instead of accepting the plea bargain offered by the state.
The state, however, maintains that before imposing sentence, the court afforded Sanders an opportunity to be heard, that his counsel had been present and that because Sanders did not receive a maximum penalty, the court did not deny him due process of law.
The issue here, then, concerns whether the trial court erred in questioning Sanders under oath and whether it sentenced him fairly.
The penalties for kidnaping and aggravated robbery, as specified in R.C. 2929.14, are as follows:
 * * * the court shall impose a definite prison term that shall be one of the following:
 (1) For a felony of the first degree, the prison term shall be three, four, five, six, seven, eight, nine, or ten years.
The court in Mitchell v. U.S. (1999), 119 S.Ct. 1307 stated at page 1313:
 Of course, a court may discharge its duty of ensuring a factual basis for a plea by "question[ing] the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant has pleaded." * * * We do not question the authority of a district court to make whatever inquiry it deems necessary in its sound discretion to assure itself the defendant is not being pressured to offer a plea for which there is no factual basis. * * *
* * *
 Where the sentence has not yet been imposed a defendant may have a legitimate fear of adverse consequences from further testimony. As the Court stated in Estelle: "Any effort by the State to compel [the defendant] to testify against his will at the sentencing hearing clearly would contravene the Fifth Amendment." 451 U.S., at 463, 101 S.Ct. 1866.
A review of the record in this case reveals that Sanders never testified during his trial and therefore had exercised his Fifth Amendment right against self-incrimination. However, the following colloquy occurred at the sentencing hearing:
 THE COURT: All right. Mr. Sanders, you face up to 30 years in prison, and part of that will be based on the statement right now, if you care to make one.
Go ahead.
Hold it.
Raise your right hand.
(Defendant sworn in)
THE DEFENDANT: I do.
THE COURT: You're under oath.
THE DEFENDANT: As far as the things that went on that night —
 THE COURT: You're going to have to speak up, so everybody in the room can hear you.
 THE DEFENDANT: As far as the things that went on that night, now knowledge I had to a certain extent of these charges of aggravated robbery and kidnaping with Gregory Martin and Damien Cleveland carried out, while I was with them, we did nothing other than —
THE COURT: No one can hear you now.
 THE DEFENDANT: I was with them, insofar as did nothing other than just look out.
THE COURT: You were the look-out man?
THE DEFENDANT: (Nods head affirmatively).
THE COURT: Where were you looking out?
THE DEFENDANT: Towards the other half of the street.
 THE COURT: I don't know the exact street name or whatever, but as far as —
THE COURT: Well, I'm interested in your version of events.
THE DEFENDANT: I didn't see this, that they went —
THE COURT: Can you bring the exhibits back out?
Bring the map out.
Deputy, bring up that board.
 I want to follow exactly what this young man has to say. I want to listen to it.
 You don't speak very clearly, sir, so I'm going to let you point it out and talk.
 I want to make sure I understand exactly what you are talking about.
 We will use the Court — Wait for the bailiff to put the State's Exhibit up, the map.
Now, you describe to me where you were standing.
THE COURT: I need a map of the actual area.
MR. MAHONEY: 10-A
 THE COURT: All right. Describe where you were standing, Mr. Sanders. I want to be able to follow you now.
I want to judge your level of culpability.
 I just have a map here, this is Exhibit 31, which is a map of North Randall, and Maple Heights, and Shaker Heights, generally.
Tell me where were you standing, sir.
THE DEFENDANT: There was some more different stores in the area.
THE COURT: The Hunan store. We have heard of that.
THE DEFENDANT: No.
THE COURT: What was —
 THE DEFENDANT: A different part of the street, a parking lot further to the right, and if I saw anything that was unusual, I was to give a sign, but once I heard the commotion, that's when I left.
THE COURT: You were on foot?
THE DEFENDANT: No.
THE COURT: Where were you?
What were you doing?
Put that up on the board.
What Exhibit number is that, deputy?
MR. KING: 10-A.
MR. MAHONEY: 10-A.
THE COURT: Okay.
Go over and show me where you were standing.
You saw the witnesses.
You know what we're talking about, right?
 There is Northfield at the bottom, so you were across the street in back of the other building there?
THE DEFENDANT: Yes.
 THE COURT: What did you do when the robbery you saw was going on, the robbery and kidnaping?
THE DEFENDANT: I didn't see it.
I heard like real loud bad yells.
That's when I left.
THE COURT: Where did you go?
THE DEFENDANT: I —
THE COURT: What were you driving?
THE DEFENDANT: I wasn't.
THE COURT: You were walking?
THE DEFENDANT: I ran, and I got into a car.
That's why I said I wasn't on foot.
THE COURT: You ran and got into a car.
So you were on foot when you were watching?
THE DEFENDANT: (Nods head affirmatively).
The court continued questioning and concluded its examination with the following colloquy:
 (THE COURT) I will give you until Monday, Mr. Sanders. You (sic) come partway, now you come closer to the truth, but you're not telling it all. That's for sure. Just save it right now.
 I will give you the whole weekend to think this over because this is going to affect up to the next 30 years of your life, and I want to make sure you're making a careful, thoughtful statement.
 I don't think you're making a careful, thoughtful statement so far.
You're giving up part of the story, not the rest.
* * *
On the following Monday morning, Sanders recanted his colloquy with the court, saying:
 * * * I just tried to say anything I felt you might want to hear. And in doing so, I lied under oath, and I just tried to implicate myself and put myself in a situation any way.
After further colloquy, the court imposed a sentence of five years for the kidnaping of Firas Essa, consecutive with five years for the kidnaping of Angela Jelovic, consecutive with five years for aggravated robbery and imposed a fine of $30,000.00.
Although the court correctly imposed sentence for these offenses as first degree felonies, in accordance with Mitchell
and Estelle, we have concluded the trial court erred when it compelled Sanders to testify under oath during the sentencing hearing. Accordingly, assignment of error sixteen is well taken and therefore, we vacate the sentence and remand the matter for resentencing. Further, because there is nothing in the record to indicate that the court vindictively sentenced Sanders for going to trial, assignment of error seventeen is overruled.
 XIX.
DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.
Here, Sanders reiterates the above eighteen assignments of error and claims that the cumulative effect of them denied him effective assistance of counsel.
The state, however, maintains that Sanders fails to establish that but for these errors, the outcome of the trial would have been different.
In considering a claim involving ineffective assistance of counsel, the court in Strickland v. Washington (1984).466 U.S. 668 set forth a two-part test:
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
In evaluating defense counsel's performance, a reviewing court must accord deference to counsel's strategic choices from counsel's perspective at the time of trial, without the benefit of hindsight. See Strickland, supra. Further, the court in Statev. Bradley (1989), 42 Ohio St.3d 136, stated in paragraph three of the syllabus:
 In order to show prejudice, the defendant must show that a reasonable probability exists that, absent counsel's error, the result of the trial would have been different.
In pursuing his claim of ineffective assistance of counsel, Sanders has the burden to show that his counsel committed grievous errors and that but for his counsel's actions, the outcome of the trial would have been different. After reviewing the transcript in this case, we cannot conclude that Sanders has demonstrated a reasonable probability that the result of his trial would have been different. Therefore, this assignment of error is overruled and the judgment of the trial court is affirmed, the sentence imposed by the trial court is vacated and the matter is remanded to the trial court for resentencing in accordance with this opinion.
Judgment affirmed, sentence vacated, and matter remanded for resentencing.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for resentencing.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI, J., CONCURS IN PART WITH CONCURRING OPINION ATTACHED
TIMOTHY E. McMONAGLE, J., CONCURS WITH JUDGE DIANE KARPINSKI'S CONCURRING OPINION
 ___________________________________ PRESIDING JUDGE, TERRENCE O'DONNELL