OPINION
{¶ 1} William Carey appeals from his conviction and sentence in the Miami County Common Pleas Court on one count of rape with a specification that the victim was less than ten years of age.
 {¶ 2} Carey advances four assignments of error on appeal. First, he contends that he was prejudiced by the lack of specific offense dates in his indictment and bill of particulars. Second, he argues that the trial court erred in failing to exclude the testimony of an expert witness who was not identified until shortly before trial. Third, he asserts that the expert's testimony should have been excluded under the Ohio Rules of Evidence. Fourth, he maintains that his conviction is against the manifest weight of the evidence.
 {¶ 3} The record reflects that Carey was indicted on September 25, 2002, on three counts of raping C.C. by forcing her to perform fellatio on him. The matter proceeded to trial before a jury on November 5-7, 2002. At trial, seven-year-old C.C. testified that all three incidents occurred at the Carey residence, where she often stayed while her mother worked. According to C.C., on each occasion she was upstairs in a room watching Carey play a video game. C.C. testified that Carey's conduct during each incident was the same. He first directed her to "come here" and made her touch his penis. He then "took her head" and forced her to perform fellatio on him, telling her afterward that it was their "little secret." C.C. testified that she delayed disclosing the abuse to her maternal grandmother. She failed to report Carey's actions immediately because she was afraid and did not know what would happen if she told someone.
 {¶ 4} C.C.'s maternal grandmother and mother also testified about C.C.'s disclosure of the sexual abuse allegations in mid-August, 2002, but they lacked first-hand knowledge about whether the allegations were true. Also testifying for the State was William Davis, the chief of the Pleasant Hill, Ohio, police department. Davis testified that he interviewed C.C. for about twenty minutes after her mother reported the sexual abuse allegations. After interviewing C.C., Davis arrested Carey and contacted the prosecutor, who approved the filing of criminal charges. The State's final witness was clinical counselor Caryn Smith, who testified about delayed disclosure of sexual abuse by child victims. Smith explained that abused children usually do not report the abuse immediately because the traumatic event produces fear and anxiety. She also testified that young children tend to disclose abuse more by accident than by design. Finally, Smith explained that when children do disclose abuse, they tend to tell someone who they think will believe and support them.
 {¶ 5} After the State rested, defense counsel called Carey's wife to testify. According to Mrs. Carey, the appellant never watched C.C. alone, and she was unaware of C.C. ever being alone with him upstairs. In addition, Mrs. Carey testified that C.C. never complained to her about the appellant, never appeared afraid of him, and never "acted out" sexually. She acknowledged on cross examination, however, that the appellant sometimes was home when she was babysitting for C.C. Carey then testified in his own defense and stated that he did not recall ever being alone with C.C. upstairs. He also denied ever babysitting for C.C. by himself. In addition, Carey denied ever touching C.C. inappropriately, forcing her to perform oral sex on him, or telling her that "this is gonna be our little secret." On cross examination, he agreed that C.C. had no reason to be afraid of him or mad at him.
 {¶ 6} Following deliberations, the jury found Carey not guilty on counts one and two of the indictment, but guilty of rape and the accompanying specification in count three. The trial court sentenced Carey to life in prison. He then filed a timely appeal, advancing the four assignments of error set forth above.
 {¶ 7} In his first assignment of error, Carey contends that he was prejudiced by the lack of specific offense dates in his indictment and bill of particulars. He argues that he "had no way of knowing if he could present evidence that he was elsewhere at the time in question because he did not know what time was in question." Stated differently, Carey suggests that he may have been able to offer an alibi if he had known precisely when the sexual abuse was alleged to have occurred.
 {¶ 8} Upon review, we find this assignment of error to be unpersuasive. In cases of child sexual abuse, young victims often are unable to remember exact dates when the offenses occurred. Because the precise date of the offense of rape is not an element of the crime, a degree of inexactitude in averring the date of the offense is not necessarily fatal to a prosecution. State v. Sellards (1987),17 Ohio St.3d 169. Nevertheless, when a defendant requests a bill of particulars, the State must supply a specific date for the alleged offense if it possesses such information. Id. Even when the State does not possess a specific date for the offense, the lack of this information may be fatal to the prosecution if it creates a material detriment to the defendant's ability to defend himself for example where the defendant asserts an alibi and claims he was elsewhere during part, but not all, of the time period specified for the offense. State v. Boehm (Dec. 31, 1997), Montgomery App. No. 16335.
 {¶ 9} In the present case, Carey was acquitted on counts one and two of the indictment. With regard to count three, the indictment originally alleged that the offense had occurred on or about "August through November, 2001." The State subsequently amended the indictment, however, to allege that the offense in count three had occurred on or about "July through August, 2002." The State then filed a bill of particulars, repeating its assertion that the offense in count three had occurred "on or about July through August, 2002, the exact date being unknown." Thereafter, the State filed an amended bill of particulars, stating, with regard to count three: "The specific date of the offense is: on or about July through August, 2002, the exact date being unknown, although this incident occurred near the time of a soccer camp in Pleasant Hill, Ohio, that took place around July 15, 2002."
 {¶ 10} Carey does not dispute that the State was unable to supply a specific date for the offense charged in count three because it did not have such information. Indeed, we find no evidence that the State possessed more specific information about the offense date than it provided in the amended bill of particulars. The remaining question is whether the State's inability to supply Carey with a specific date for the offense in count three was materially detrimental to his ability to defend himself. Although Carey suggests without elaboration that he may have been able to advance an alibi defense, he neither attempted to assert an alibi defense at trial nor filed a notice of alibi. In other words, Carey did not attempt to show at trial that he was indisputably elsewhere during at least part of the time when the offense allegedly occurred. Instead, he simply claimed that the incident never happened and that he never touched C.C. inappropriately. Under these circumstances, the record does not establish that Carey's ability to defend himself was materially prejudiced.[1] Accordingly, we overrule his first assignment of error.
 {¶ 11} In his second assignment of error, Carey argues that the trial court erred in failing to exclude the testimony of expert witness Caryn Smith, who was not identified until shortly before trial. In support, Carey contends that he might have obtained his own expert witness if he had known earlier that the State intended to introduce expert psychological testimony.
 {¶ 12} Although we believe Smith's identity should have been disclosed earlier, we do not find that the trial court abused its discretion in allowing her to testify. The record reflects that trial in this matter was set for November 5, 2002. Defense counsel on October 22, 2002, filed a motion to compel the State to provide the names of its witnesses. On October 28, 2002, the trial court filed an order directing the State to provide this information by 4:00 p.m. on Friday, November 1, 2002. The case then proceeded to trial on November 5, 2002. Just prior to Smith's testimony in the middle of trial, defense counsel objected on the basis that her identity was not timely disclosed. In support, defense counsel argued that her name did not appear on an October 25, 2002, witness list. Defense counsel also asserted that on October 30, 2002, he received a letter from the prosecutor's office stating that an "unknown expert" would testify. According to defense counsel, he did not discover Smith's identity until November 4, 2002, the day before trial. Defense counsel did not dispute, however, that on November 1, 2002, the prosecutor had hand-delivered a letter identifying Smith in compliance with the court's order of October 28, 2002.
 {¶ 13} In any event, while discussing defense counsel's mid-trial objection to Smith's testimony, the trial court asked whether he needed "some additional time to prepare" or "some sort of a continuance or anything" if Smith were allowed to testify. Defense counsel responded, "Nope." In addition, on the morning of trial, the court, addressing a different issue, filed a written entry noting that it "has offered to continue the trial if the Defendant feels additional time is needed to prepare, or review material recently submitted, which offer the Defendant has eschewed in favor of proceeding with his trial strategy."
 {¶ 14} In light of defense counsel's representation that he did not need a continuance or time to prepare for Smith's testimony, and his rejection of an offered continuance, we cannot say that the trial court abused its discretion in allowing her to testify. If Carey believed that he would be prejudiced by Smith's testimony, he should have raised the issue before trial and should have accepted the trial court's offer of a continuance. Given his failure to do so, we are unpersuaded that the trial court abused its discretion in allowing Smith to testify.
 {¶ 15} In rejecting Carey's second assignment of error, we note too that Smith's testimony was brief and not particularly damaging to him. Smith first testified that children typically do not report abuse immediately because the traumatic event produces fear and anxiety. In the present case, however, C.C. reported the sexual abuse alleged in count three soon after it occurred. Although the delay was longer between the abuse and the reporting in counts one and two, Carey was acquitted of those charges. Smith also testified that young children tend to disclose abuse accidentally rather than intentionally. In the present case, however, C.C.'s reporting of the abuse was not accidental. To the contrary, she testified that she "thought it over" and decided that she should tell her grandmother. Finally, Smith explained that when children do disclose abuse, they tend to tell someone who they think will believe and support them. This revelation was not particularly prejudicial to Carey. Accordingly, we reject his argument that he was prejudiced by the trial court's decision to allow Smith to testify, and we overrule his second assignment of error.
 {¶ 16} In his third assignment of error, Carey asserts that Smith's testimony should have been excluded under Evid.R. 702(A), which provides that a witness may testify as an expert if her testimony "relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons." According to Carey, Smith's testimony did not assist the jury in its understanding of the evidence and had no purpose other than to bolster C.C.'s credibility. As a result, he contends that the testimony was inadmissible.
 {¶ 17} Upon review, we find Carey's argument to be unpersuasive. As an initial matter, we question whether he properly raised the Evid.R. 702(A) issue in the trial court. The record reveals that just prior to the start of Smith's testimony, he specifically objected on the basis of Evid.R. 702(C), which provides that expert testimony must be "based on reliable scientific, technical, or other specialized information." Carey also cited Evid.R. 104(A), which generally provides that whether a witness is qualified to testify as an expert is a matter for the court to decide. See State v. Cartwright, Montgomery App. No. 18723,2002-Ohio-539. In any event, even if Carey properly preserved the Evid.R. 702(A) issue, it was within the trial court's discretion to find that Smith's testimony about the disclosure and reporting of abuse by children related to matters beyond the knowledge and experience of lay persons. See, e.g., State v. Moore (Feb. 7, 2001), Lorain App. No. 00CA007587 (recognizing that "it is usually not within a juror's common knowledge or experience how a child sexual abuse victim might respond");State v. Carte (Jan. 14, 1999), Cuyahoga App. No. 72955 ("We do not believe that an ordinary juror would be conversant with a child sexual abuse victim's tendency to delay reporting the abuse."); State v. James
(Aug. 24, 1995), Hardin App. No. 6-94-18 (finding that expert testimony was admissible because it "illuminated for the jury" reasons why children might not immediately report abuse). Accordingly, we overrule Carey's third assignment of error.
 {¶ 18} In his fourth assignment of error, Carey maintains that his conviction on count three of the indictment is against the manifest weight of the evidence. In support, he argues that the jury acquitted him on two counts yet seemingly inconsistently convicted him on count three based upon essentially the same evidence. He also argues that C.C.'s testimony was unreliable, that the State lacked any physical evidence, and that the State could not prove precisely when the crime occurred.
 {¶ 19} The foregoing arguments fail to persuade us that Carey's conviction is against the manifest weight of the evidence. When a defendant raises a manifest-weight challenge, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice. State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175.
 {¶ 20} Having performed the appropriate review in the present case, we do not find that the evidence weighs heavily against Carey's conviction. Although a reviewing court is entitled to consider witness credibility when reviewing a manifest-weight challenge, such a review must be tempered by the principle that weight and credibility of a witness' testimony primarily are for the trier of fact. State v. DeHass
(1967), 10 Ohio St.2d 230. In the present case, C.C. testified that Carey forced her to perform oral sex, and he denied the allegation. Thus, given the absence of any physical evidence, the jury simply was required to choose whom to believe. In electing to believe C.C., the jury did not clearly lose its way and create a manifest miscarriage of justice. We have reviewed C.C.'s testimony carefully, and we find nothing to call its credibility into doubt.
 {¶ 21} We also find no merit in Carey's argument that his conviction on count three is against the manifest weight of the evidence because the jury acquitted him on counts one and two. It is true that C.C.'s testimony about each of the three incidents was identical. C.C. testified that on each occasion, she went upstairs to watch Carey play a video game and he engaged in the same abusive conduct. Although we do not know why the jury acquitted Carey on the first two counts and convicted him on the third, it is well established that the several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out of inconsistent responses to different counts. Dunn v. United States (1932), 284 U.S. 390; Browningv. State (1929), 120 Ohio St. 62. It may have been that the jury was more comfortable with their verdict on the count in which C.C. was more precise about the date of the alleged rape. For present purposes, however, we need not speculate why the jury acquitted Carey on counts one and two. The issue is whether his conviction on count three is against the manifest weight of the evidence. After reading the full transcript of his trial, we conclude that it is not. Accordingly we overrule his fourth assignment of error and affirm the judgment of the Miami County Common Pleas Court.
Judgment affirmed.
GRADY, J., and YOUNG, J., concur.
[1] We are not wholly unsympathetic to Carey's argument that he had no opportunity to present an alibi defense because he did not know the specific date at issue. Our prior case law suggests, however, that Carey should have presented an alibi establishing that he was elsewhere during at least part of the time period when the offense allegedly occurred. SeeState v. Smith (Nov. 8, 1995), Greene App. No. 94. For example, if Carey could have presented evidence that he was out of town on certain days within the time frame alleged by the State, he would have a much stronger argument that the lack of specificity materially prejudiced his ability to defend himself. Given that Carey presented no such evidence, however, we cannot find that the State's inability to provide a specific date for the offense was prejudicial.