OPINION
{¶ 1} Defendant-appellant Daryl D. Reed appeals from his conviction and sentence for Trafficking in Cocaine and Possession of Cocaine. He contends that the State did not present sufficient evidence to prove the offenses and that the convictions are against the manifest weight of the evidence. He further contends that the trial court erred by permitting the State to introduce evidence of prior bad acts.
 {¶ 2} We conclude that Reed's conviction for Trafficking in Cocaine is neither unsupported by the evidence nor against the manifest weight of the evidence where the offense consisted of a sale to a police informant using marked bills, which were recovered from Reed and his girlfriend, the informant testified concerning the transaction, and the transaction was recorded on videotape. Proof that Reed had possession of cocaine found at his girlfriend's residence — that he exercised dominion and control over it — although circumstantial, was strong. That evidence supported Reed's conviction for Possession of Cocaine, which was not against the manifest weight of the evidence. The admission in evidence of a ledger of illegal drug transactions kept by Reed was not a violation of Evid. R. 404(B), because it was not offered to prove the forbidden inference that because Reed committed other bad acts, he likely committed the charged offense. To the contrary, it was offered to prove that the cocaine found in the residence was inventory in an ongoing enterprise maintained by Reed, so that he was exercising the dominion and control over the cocaine necessary to prove the Possession of Cocaine charge. Accordingly, the judgment of the trial court is affirmed.
 I {¶ 3} In June 2002, the City of Urbana Police arranged for Rusty McCoy to make a controlled undercover drug buy from Reed. McCoy agreed to make the buy in order to "work off" charges pending against him for theft and passing bad checks. On June 10, 2002, McCoy called Reed and arranged to meet him. Prior to the meeting, the police conducted a search of McCoy's person and vehicle. They then wired him and provided him with fifty dollars for the buy. The money was "marked" by being photocopied, and the copies were kept by the police.
 {¶ 4} The sale was scheduled to take place at Steve's Market Deli, in Urbana, but Reed left the Market and drove his car to his girlfriend's residence. McCoy followed him there. While Reed went into the residence, McCoy waited outside beside Reed's car. Reed's girlfriend and her two minor children also remained outside sitting in the car. When Reed came back outside, he gave McCoy crack cocaine in exchange for the marked money. The police followed McCoy and Reed from the Market to the residence in undercover vehicles, and they video-taped the entire incident.
 {¶ 5} McCoy then left the residence and met with the police in the Urbana City Park. McCoy handed some of the cocaine to the police. Following another search of McCoy's vehicle and person, the police found that McCoy had attempted to keep a portion of the cocaine for himself. McCoy was charged with Tampering with Evidence.
 {¶ 6} Reed and his girlfriend were subsequently stopped in their vehicle, and the marked money was recovered. Reed had five dollars of the money on his person; his girlfriend had the remaining forty-five dollars.
 {¶ 7} Later that day, the police obtained a search warrant for Reed's girlfriend's residence. During the search the police found a gun, marijuana, drug paraphernalia, cocaine and a ledger containing names and notations regarding balances due to or from those named.
 {¶ 8} Reed was indicted on one count of Trafficking in Cocaine within one thousand feet of a school and in the presence of a juvenile, one count of Possession of Cocaine, one count of Weapons Under Disability, one count of Drug Abuse and one count of Possession of Drug Paraphernalia. Following trial, a jury found Reed guilty of Trafficking and Possession of Cocaine, as charged, and sentenced accordingly. Reed was acquitted on the remaining charges. From his conviction and sentence, Reed appeals.
 II {¶ 9} Reed's First Assignment of Error provides as follows:
 {¶ 10} "The Jury's Verdict In The Case At Hand Was Contrary To The Sufficiency And Weight Of The Evidence Presented."
 {¶ 11} The basis for this assignment of error is Reed's contention that the testimony of Rusty McCoy and Kirk Fleming, State's witnesses, was not worthy of belief.
 {¶ 12} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259:
 {¶ 13} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 14} In reviewing a judgment to determine whether it is against the manifest weight of the evidence, an appellate court sits as a "thirteenth juror," reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v.Thompkins (1997), 78 Ohio St.3d 380.
 {¶ 15} We begin with the conviction for Trafficking in Cocaine. This offense is prohibited by R.C. 2925.03, which provides, in pertinent part, that no person shall knowingly sell cocaine or a compound, mixture, preparation, or substance containing cocaine, in the vicinity of a school or in the vicinity of a juvenile.
In this case, the State presented evidence of the buy, consisting of testimony from McCoy and a video-tape showing the transaction. It is clear from the record that McCoy was searched for drugs prior to meeting Reed and that he was provided with money for the purchase. The record further shows a meeting between Reed and McCoy during which an exchange is made. The record demonstrates that after the meeting, McCoy was followed to a park where he handed the cocaine to the police, and was again searched. Additionally, the record shows that Reed and his girlfriend had the marked money in their possession after the transaction. Moreover, the State presented uncontroverted evidence that the drug transaction took place in the presence of the two minor children of Reed's girlfriend and also within six hundred feet of a school.
 {¶ 16} We find that the State presented evidence sufficient to establish that Reed knowingly sold cocaine to McCoy in the vicinity of a juvenile and a school, and that each element of the offense of Trafficking in Cocaine was established. We further conclude that the jury's decision to convict Reed of that offense is not against the manifest weight of the evidence.
 {¶ 17} We next turn to the conviction for Possession of Cocaine which stems from the 9.36 grams of cocaine found in the upstairs bedroom of Reed's girlfriend in the home located at 520 Boyce Street.
 {¶ 18} R.C. 2925.11 provides in part that no person shall knowingly possess five to ten grams of cocaine. Pursuant to R.C.2925.01(K), "possession" means having control over a thing or substance.
 {¶ 19} "Possession may be actual or constructive." State v. Ruby,149 Ohio App.3d 541, 2002-Ohio-5381, ¶ 30. "When possession is alleged to be constructive, the crucial issue is not whether the accused had actual physical contact with the article concerned, but whether the accused was capable of exercising dominion or control over it." Id., citation omitted. "Constructive possession exists when an individual is able to knowingly exercise dominion or control over an object, even though it is not within his immediate physical possession." Id., at ¶ 36, citation omitted. "Circumstantial evidence and direct evidence have the same probative value." Id., citation omitted.
 {¶ 20} The State introduced the testimony of Kirk Fleming. Fleming is the nephew of Reed's girlfriend, and was living in the Boyce Street residence at all times relevant to this case. Fleming's testimony established that Reed had access to the residence and that he sometimes stayed overnight at the home. Fleming testified that in the month before the sale to McCoy, people would come to the house and ask for Reed. Reed was seen taking individuals upstairs. These individuals would remain upstairs for a few minutes and would then leave with something in their hands. Some of the people came to the house three or four times.
 {¶ 21} Additionally, a document identified by the police as a drug ledger was found in the bedroom. The ledger had the name "Rusty," McCoy's first name, written on it along with various numerical figures. The ledger also had other names and amounts on it.
 {¶ 22} During the sale to McCoy, Reed entered the house for a few minutes before returning to give cocaine to McCoy. Cocaine was found in the bedroom on the day of the McCoy sale. A ledger with the name Rusty was found in the bedroom. Prior to the sale to McCoy, Reed was observed taking various other people upstairs who departed within minutes with something in their hands. Based upon this evidence, the jury could reasonably find that Reed was in constructive possession of the cocaine.
 {¶ 23} Finally, we address Reed's contention that the jury clearly lost its way in crediting the testimony of McCoy and Fleming. The credibility of witnesses and the weight attributable to their testimony are primarily matters for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, 39 O.O.2d 366, paragraph one of the syllabus. We cannot say, after reviewing the testimony of these two witnesses, that the jury lost its way in finding them credible.
 {¶ 24} The First Assignment of Error is overruled.
 III {¶ 25} Reed's Second Assignment of Error states:
 {¶ 26} "The Trial Court Erred By failing To Grant A Mistrial Demanded By Defense Counsel After The Court Inappropriately Introduced Evidence Of Prior Bad Acts In The Form Of Drug Ledger Sheets."
 {¶ 27} Reed contends that the trial court erred by permitting the State to introduce the drug ledger, which he contends constituted evidence of prior bad acts, in violation of Evid.R. 404. He argues that the admission of the ledger was so prejudicial that a mistrial was warranted.
 {¶ 28} Evid.R. 404(B) provides:
 {¶ 29} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 30} The admissibility of "other acts" evidence is within the sound discretion of the trial court. State v. Matthews (1992),80 Ohio App.3d 409, 415. A reviewing court should reverse a trial court's evidentiary ruling only on an abuse of discretion that amounts to prejudicial error. State v. Graham (1979), 58 Ohio St.2d 350, 352.
 {¶ 31} In this case, in order to convict Reed of Possession of Cocaine, the jury was required to find that the cocaine in the bedroom belonged to Reed. To reach this conclusion, the jury had to determine that Reed was in constructive possession of the cocaine, and that the cocaine did not belong to Reed's girlfriend.
 {¶ 32} The State introduced the ledger to tie the cocaine to Reed. Since McCoy was linked to Reed with regard to the sale of cocaine, the ledger containing McCoy's first name helped to link Reed to the cocaine found in the bedroom on the same day the sale was made.
 {¶ 33} Evid. R. 404(B) bars the admission of evidence of other bad acts when that evidence is offered solely, or primarily, in support of the forbidden inference that because the accused has done bad acts on prior occasions, he likely did the bad act with which he is charged. The Rule does not bar the admission of evidence of other bad acts when that evidence is not offered solely, or primarily, to establish the forbidden inference, but is offered for other purposes, like the permissible purposes expressly set forth in the Rule. In this case, the ledger was not offered to prove that Reed is a bad character, but was offered for the legitimate purpose of establishing that the cocaine found in the residence was inventory in an ongoing enterprise in which Reed sold cocaine to others, like McCoy. This tended to prove that Reed exercised dominion and control over the cocaine, which was an essential element of the Possession of Cocaine offense.
 {¶ 34} The Second Assignment of Error is overruled.
 IV {¶ 35} Reed's Assignments of Error being overruled, the judgment of the trial court is affirmed.
WOLFF and GRADY, JJ., concur.