OPINION
{¶ 1} Defendant-appellant Craig L. Bishop appeals from his conviction and sentence for Possession of Crack Cocaine, Tampering with Evidence, and Improperly Discharging a Firearm at or into a Habitation, following a jury trial. Bishop contends that the trial court erred in denying his motion to suppress, because evidence presented was based on inadmissible hearsay and should have been excluded. Because we conclude that the out-of-court statements upon which the police officers relied in deciding to stop Bishop and to frisk him are not hearsay in the context of the issues of probable cause being adjudicated at the suppression hearing, and for the further reason that hearsay evidence is not inadmissible at a suppression hearing, we conclude that the trial court committed no error, much less plain error, in having admitted those statements, to which Bishop made no objection.
 {¶ 2} Bishop contends that his conviction is against the manifest weight of the evidence and based upon insufficient evidence, because it is based on circumstantial evidence and conflicting testimony as well as evidence that should have been excluded by the trial court at the suppression hearing. Bishop also contends that the trial court erred in giving jury instructions regarding the Possession of Crack Cocaine and Tampering with Evidence charges, because there was insufficient evidence to sustain the charges.
 {¶ 3} After reviewing the record, we conclude that the State presented evidence sufficient to establish that Bishop knowingly possessed crack cocaine, and that each element of Possession of Crack Cocaine was established. We also conclude that the State presented evidence sufficient to establish that Bishop knew that an investigation was in process and concealed the crack cocaine with the purpose to impair its availability as evidence in the investigation, and that each element of Tampering with Evidence was established. Based upon this decision, we also conclude that the trial court did not err in giving jury instructions regarding the Possession of Crack Cocaine and Tampering with Evidence charges.
 {¶ 4} We further conclude that the State presented evidence sufficient to establish that Bishop knowingly discharged a firearm at an occupied structure that is the permanent or temporary habitation of an individual, and that each element of Discharging a Firearm at or into a Habitation was established. Finally, we conclude that the jury's decision to convict Bishop of Possession of Crack Cocaine, Tampering with Evidence, and Discharging a Firearm at or into a Habitation is not against the manifest weight of the evidence.
 {¶ 5} Accordingly, the judgment of the trial court is affirmed.
 I {¶ 6} In February, 2003, Craig Bishop and Orlando Williams allegedly showed up at the residence of De'Angela Patterson, Bishop's ex-girlfriend and the mother of his child. Patterson was at her residence with her child and two brothers, Wesley Patterson and Corey Patterson. Patterson told Bishop and Williams to leave. Bishop and Williams allegedly returned to the vehicle they came in, a maroon 1995 Buick Riviera owned by Bishop's mother, Carla Jones, lifted the trunk of the vehicle, and Bishop pulled something out. Bishop allegedly got into the passenger side and Williams got into the driver's seat, the side of the car closest to Patterson's house. Williams and Bishop allegedly drove off slowly without the headlights on. A few minutes later, Williams and Bishop allegedly returned driving past Patterson's residence, with the passenger side of the car closest to Patterson's residence, and firing gunshots at Patterson's residence. Patterson called the police.
 {¶ 7} Officer Clarence Gabbard of the Springfield Police Department was dispatched to Patterson's residence. After speaking with Patterson, Officer Gabbard informed dispatch to alert other police officers of the suspect, Craig Bishop, and the suspect vehicle, a maroon 1995 Buick Riviera. Officer Gabbard recovered bullet fragments from the exterior of the residence.
 {¶ 8} Officer Shane Davis located the suspect vehicle at a Speedway gas station and observed Bishop in the store. Officer Davis entered the store to question Bishop until backup arrived. Officer Sandra Fent and Officer Ronald Jordan arrived together at the Speedway. Officer Jordan handcuffed Bishop, patted him down for weapons, and placed him in the backseat of his police cruiser. Officer Gabbard then arrived at the Speedway. Officer Gabbard saw a box of ammunition and an empty brass casing in the front passenger seat of the Buick Riviera. Bishop was removed from Officer Fent and Officer Jordan's cruiser and placed in the backseat of Officer Gabbard's cruiser. After conducting a search of the backseat of her cruiser to make sure Bishop did not leave anything behind, Officer Fent found a baggie of crack cocaine in the seat where Bishop had been sitting. Bishop was then arrested, and the Buick Riviera was towed to the sallyport at the police headquarters.
 {¶ 9} Carla Jones, Bishop's mother and the owner of the Buick Riviera, did not consent to a search of the vehicle, but a search warrant was obtained and the car was searched after it was towed to the police headquarters. A 9 millimeter gun was found in the trunk and a spent casing and ammunition was recovered from the front passenger seat of the vehicle. Black gloves, casings, spent casings, and a magazine loaded with 9 millimeter cartridges were also found in the vehicle. Bishop was searched at the jail and a casing was retrieved from his right, front coat pocket.
 {¶ 10} Bishop was subsequently indicted for one count of Possession of Crack Cocaine, in violation of R.C. 2925.11, one count of Tampering with Evidence, in violation of R.C.2921.12(A)(1), and one count of Improperly Discharging a Firearm at or into a Habitation, in violation of R.C. 2923.161 and with a firearm specification. Bishop filed a motion to suppress evidence. After a hearing, the trial court denied Bishop's motion to suppress, finding that the search was properly conducted because the police officers had probable cause and a search warrant, and the items seized were in plain view. The case proceeded to a jury trial, and the jury found Bishop guilty on all counts. Bishop was sentenced to imprisonment for a total term of nineteen years.
 {¶ 11} Bishop has appealed his conviction and sentence to this court. On appeal, Bishop has moved for leave to supplement the record to include an affidavit, which includes facts pertaining to Bishop's claims of ineffective assistance of counsel. We have overruled Bishop's motion to supplement the record, concluding that to the extent the facts upon which he seeks to rely were not before the trial court, the record for purposes of this appeal may not be supplemented with these facts. Bishop has filed a brief; the State has not.
 II {¶ 12} Bishop's first and second assignments of error are as follows:
 {¶ 13} "The court erred and abused its discretion when it denied the defendant's motion to suppress.
 {¶ 14} "The defendant-appellant was denied effective assistance of counsel and therefore constitutional due process of law."
 {¶ 15} Bishop contends that the trial court erred in denying his motion to suppress, because evidence presented at the suppression hearing was based on inadmissible hearsay and should have been excluded. Bishop contends that the hearsay was inadmissible, because it was not based on independent indicia of reliability.
 {¶ 16} Although Bishop does not specifically identify the testimony that he contends to have been hearsay, it appears from his brief that he is challenging the out-of-court statements constituting the reports of the shooting that were relayed to the police officers who then conducted the investigation. The focus of the suppression hearing was whether the officers had sufficient probable cause to stop or frisk Bishop. Whether they had probable cause necessarily depends upon the information relayed to them and whether they could reasonably have relied upon it, based upon what they knew at that time. The statements of others that were relayed to them are not, in the context of the suppression hearing, hearsay, because they are being offered not to prove their truth, but to prove that the statements were, in fact, relayed to the officers, who relied, in part, upon those statements in deciding whether to stop and later frisk Bishop.
 {¶ 17} Even if the statements were deemed to have been hearsay in the context of the suppression hearing, they would not necessarily have been inadmissible merely for that reason. Evid.R. 802 provides that "[h]earsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio." Evid.R. 101(C)(1) provides that the Ohio Rules of Evidence do not apply to "[d]eterminations prerequisite to rulings on the admissibility of evidence when the issue is to be determined by the court under Evid. R. 104." Evid.R. 104(A) provides that "[p]reliminary questions concerning * * * the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (B). In making its determination it is not bound by the rules of evidence except those with respect to privileges."
 {¶ 18} The trial court has broad discretion to admit or exclude evidence in a suppression hearing. State v. Woodring
(1989), 63 Ohio App.3d 79, 81, 577 N.E.2d 1157. In accordance with Evid.R. 101(C)(1) and Evid.R. 104(A), the undisputed status of a witness's testimony as hearsay does not per se bar its use. See id. We have previously stated the following:
 {¶ 19} "[I]t is settled law that the rules of evidence and the hearsay exclusionary rule do not apply in a suppression hearing. Evid.R. 101(C); Evid.R. 104(A); State v. Woodring
(1989), 63 Ohio App.3d 79. State v. Parsons (1989),64 Ohio App.3d 63, 68. In Parsons the court quoted the United States Supreme Court as follows:
 {¶ 20} "`This Court on other occasions has noted that the interests at stake in a suppression hearing are of a lesser magnitude than those in a criminal trial itself. At a suppression hearing, the Court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial . . .'United States v. Raddatz (1980), 447 U.S. 667, 679.
 {¶ 21} "The trial court has broad discretion in determining the admissibility of evidence and such evidentiary rulings will not be reversed on appeal absent a clear abuse of discretion which materially prejudiced an objecting party. State v. Sage
(1987), 31 Ohio St.3d 173. An abuse of discretion `connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' State v.Adams (1980), 62 Ohio St.2d 151, 157." State v. Pipkins,
Montgomery App. No. CA 15060, 1996 WL 50158, at *4.
 {¶ 22} Because we conclude that the out-of-court statements upon which officers Gabbard and Fent relied in deciding to stop Bishop and to frisk him are not hearsay in the context of the issues of probable cause being adjudicated at the suppression hearing, and for the further reason that hearsay evidence is not inadmissible at a suppression hearing, we conclude that the trial court committed no error, much less plain error, in having admitted those statements, to which Bishop made no objection.
 {¶ 23} Bishop also contends that he was denied due process of law, because defense counsel was ineffective in failing to object to the inadmissible hearsay evidence presented at the suppression hearing and in failing to demand independent indicia of reliability of the hearsay evidence. Because we conclude that the statements to which Bishop alludes are not hearsay in the context of the issues of probable cause for which they were offered, and for the further reason that hearsay evidence is not per se inadmissible in a suppression hearing, we conclude that his trial counsel was not ineffective for having failed to object to the admission of those statements.
 {¶ 24} We also note that because we have overruled Bishop's motion requesting this court for leave to supplement the record to include an affidavit, which avers certain facts pertaining to Bishop's claims of ineffective assistance of counsel, we need not address Bishop's arguments that are based upon those particular facts.
 {¶ 25} Although Bishop also contends that the trial court erred in denying his motion to suppress evidence, because there was insufficient evidence to establish that he actually possessed the crack cocaine, this is not relevant as to whether the evidence should be suppressed because it was unlawfully seized. We will address this issue in connection with Bishop's remaining assignments of error.
 {¶ 26} Bishop's first and second assignments of error are overruled.
 III {¶ 27} Bishop's third, fourth, and fifth assignments of error are as follows:
 {¶ 28} "The verdict of the jury was against the manifest weight of the evidence.
 {¶ 29} "The verdict of the jury was based upon insufficient evidence.
 {¶ 30} "The court erred in giving the jury an instruction on a possession of drugs and/or tampering charge given that the only evidence from which `possession' could be inferred was that the defendant-appellant occupied the premises in which it was found."
 {¶ 31} In his assignments of error, Bishop challenges the sufficiency and the weight of the evidence. Bishop contends that his conviction is against the manifest weight of the evidence and based upon insufficient evidence, because it is based on circumstantial evidence and conflicting testimony as well as evidence that should have been excluded by the trial court at the suppression hearing. Bishop also contends that the trial court erred in giving jury instructions regarding the Possession of Crack Cocaine and Tampering with Evidence charges, because there was insufficient evidence to sustain the charges.
 {¶ 32} "A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins,78 Ohio St.3d 380,1997-Ohio-52. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v.Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492:
 {¶ 33} "`An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'
 {¶ 34} "In reviewing a judgment to determine whether it is against the manifest weight of the evidence, an appellate court sits as a `thirteenth juror,' reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v.Thompkins (1997), 78 Ohio St.3d 380, 678 N.E.2d 541." State v.Reed, Champaign App. No. 2002-CA-30, 2003-Ohio-5413, at ¶¶ 12-14.
 {¶ 35} Bishop was convicted of Possession of Crack Cocaine, Tampering with Evidence, and Discharging a Firearm at or into a Habitation. We begin with the convictions for Possession of Crack Cocaine and Tampering with Evidence. R.C. 2921.12(A)(1), Tampering with Evidence, states that "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]" R.C. 2925.11(A), Possession of Drugs, states that "[n]o person shall knowingly obtain, possess, or use a controlled substance."
 {¶ 36} R.C. 2925.01(K) defines "possession" as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." "`Possession may be actual or constructive.' `When possession is alleged to be constructive, the crucial issue is not whether the accused had actual physical contact with the article concerned, but whether the accused was capable of exercising dominion or control over it.' `Constructive possession exists when an individual is able to knowingly exercise dominion or control over an object, even though it is not within his immediate physical possession.' `Circumstantial evidence and direct evidence have the same probative value.'" Reed,
2003-Ohio-5413, at ¶ 19, internal citations omitted.
 {¶ 37} Officer Sandra Fent testified that after she and her partner, Officer Ronald Jordan, arrived at the scene, Officer Jordan handcuffed Bishop, patted him down for weapons, and placed him in the back seat of their cruiser on the left-hand side, behind the driver's seat. Officer Fent testified that Bishop was later removed from her cruiser and placed in Officer Gabbard's cruiser. Officer Fent testified that after Bishop was removed from her cruiser, she conducted a search in the backseat of her cruiser and found a baggie of crack cocaine in the backseat on the left-hand side, behind the driver's seat, where Bishop had been sitting. Officer Fent further testified to the following:
 {¶ 38} "Q. Prior to going out that evening on your shift and, in fact, every time that you ever go out on your shift, you take any type of measures where you search your vehicle?
 {¶ 39} "A. Yes. When I — when I leave roll call, we go downstairs. The thing I do is open the trunk. Then if I'm driving, I unlock the car. If not, my partner unlocks the car. And then I check the backseat.
 {¶ 40} "Q. Okay. What's the purpose for checking your backseat every time you do that?
 {¶ 41} "A. To make sure that there's nothing left with the previous shift or anyone else was in the car prior to me.
 {¶ 42} "Q. Did you do that on this particular occasion?
 {¶ 43} "A. Yes, I did.
 {¶ 44} "Q. You searched the backseat area of your cruiser?
 {¶ 45} "A. Yes.
 {¶ 46} "Q. And how thoroughly do you go through searching that?
 {¶ 47} "A. I lift — the backseat completely comes — the bottom completely comes out, and I pull on the back rest and pull it out to make sure nothing's stuffed up there.
 {¶ 48} "Q. So you're actually dismantling the seat to make sure nothing is underneath in there?
 {¶ 49} "A. Yes.
 {¶ 50} "Q. And you did this on this particular occasion?
 {¶ 51} "A. Yes.
 {¶ 52} "Q. And when you searched it, was there anything inside of that vehicle?
 {¶ 53} "A. No.
 {¶ 54} "Q. When you went out on your shift, then, it's basically clean?
 {¶ 55} "A. Yes.
 {¶ 56} "Q. Had — had there been — if you take anybody into custody and put them in the backseat of your cruiser, what is your policy once they're either released or booked into jail or whatever?
 {¶ 57} "A. I — if we're in the jail, my partner would take them out of the car or a backup person; and then before they even get inside the jail, I check the backseat again.
 {¶ 58} "Q. And that's to determine whether or not they've left anything in there?
 {¶ 59} "A. That's correct.
 {¶ 60} "Q. On this particular evening when you're working and you go out initially on your shift, has anybody been in the backseat of your cruiser prior to Mr. Bishop going in?
 {¶ 61} "A. No. • * *
 {¶ 62} "Q. Is there any question in your mind as to where this rock-like object came from?
 {¶ 63} "A. None whatsoever.
• * *
 {¶ 64} "Q. Are you certain that this wasn't there prior to Mr. Bishop being in the car?
• * *
 {¶ 65} "A. Yes, I was."
 {¶ 66} We conclude that the jury could reasonably find, based upon this evidence, that Bishop was in constructive possession of the crack cocaine, and that Bishop knew that an investigation was in process and concealed the crack cocaine with the purpose to impair its availability as evidence in the investigation. We further conclude that the jury's decision to convict Bishop of Possession of Crack Cocaine and Tampering with Evidence is not against the manifest weight of the evidence. Based upon this decision, we also conclude that the trial court did not err in giving jury instructions regarding the Possession of Crack Cocaine and Tampering with Evidence charges.
 {¶ 67} Bishop was also convicted of Discharging a Firearm at or into a Habitation, in violation of R.C. 2923.161, which states that "[n]o person, without privilege to do so, shall knowingly * * * [d]ischarge a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual[.]"
 {¶ 68} De'Angela Patterson and her brothers, Corey Patterson and Wesley Patterson, all testified that Bishop and Orlando Williams showed up at Patterson's residence and that Patterson asked them to leave. They testified that Bishop and Williams then went back to the vehicle they arrived in, a maroon 1995 Buick Riviera owned by Bishop's mother, lifted the trunk and Bishop pulled something out. They testified that Bishop then got into the passenger side and Williams got into the driver's seat, the side of the car closest to Patterson's house. They testified that Williams and Bishop drove off slowly without the headlights on. They testified that a few minutes later, they heard gunshots fired, and they all dropped down to the floor. They testified that they looked outside the windows and saw the tail end of the maroon Buick Riviera, with the passenger side of the vehicle facing Patterson's residence. They testified that on the night of the shooting, Bishop had his hair cut short and Williams had dread locks in his hair.
 {¶ 69} Ronnesha Strodes, Patterson's neighbor from across the street, corroborated the testimonies of De'Angela Patterson, Corey Patterson, and Wesley Patterson. Strodes testified that she was not friends with Patterson, and that she had never met Patterson before the shooting. Strodes testified that on the night of the shooting, she saw two black males show up in front of Patterson's house. She testified that one of the black males had his hair cut short and the other had dread locks in his hair. Strodes testified that she saw the two black males get in their vehicle and leave. She testified that the black male with the dread lock hair was the driver, and that the black male with the short hair cut got in the passenger side of the vehicle. Strodes testified that when they drove off, the driver's side door was closest to Patterson's residence. Strodes testified that after she saw them drive off, she went into her house and a few minutes later, she heard gunshots fired. Strodes testified that "after we stopped hearing the shots, we saw the same car that we seen with the two black guys at the door going toward the stop sign." Strodes testified that the passenger side of the vehicle was closest to Patterson's residence. Strodes did testify that the vehicle was a dark color, either black or navy blue.
 {¶ 70} Officer Gabbard testified that after he arrived and spoke to Patterson, he collected bullet fragments from the exterior of Patterson's residence. Officer Gabbard testified that after Bishop was arrested and the Buick Riviera was towed to the sallyport at the police headquarters, a search warrant was obtained and the car was searched. Officer Gabbard testified that a 9-millimeter gun was found in the trunk and a spent casing and ammunition, consistent with a 9-millimeter gun, were recovered from the front passenger seat of the vehicle. Officer Gabbard testified that casings, spent casings, and a magazine loaded with cartridges, all consistent with a 9-millimeter gun, as well as black gloves were also found in the vehicle. Officer Shane Davis testified that when Bishop was brought to the jail, he was searched and a casing, consistent with a 9-millimeter gun, was retrieved from his right, front coat pocket.
 {¶ 71} Todd Robinson, forensic criminalist for the Springfield Police Department, testified as follows:
 {¶ 72} "Q. * * * [D]o you have an opinion based upon a reasonable degree of scientific certainty as to whether or not State's Exhibit B, that 9 millimeter firearm, fired every one of those spent shell casings?
 {¶ 73} "A. Again, the casings that were presented to me all had numerous identical striations to the test firing of Exhibit B so, therefore, it's my opinion that these casings here came from the weapon of Exhibit B to the exclusion of all other weapons."
 {¶ 74} We conclude that, based on the foregoing testimony, the jury could reasonably find that Bishop knowingly discharged a firearm at an occupied structure that is a permanent or temporary habitation of an individual. We conclude that the State presented evidence sufficient to establish that Bishop knowingly discharged a firearm at an occupied structure that is the permanent or temporary habitation of De'Angela Patterson, and that each element of Discharging a Firearm at or into a Habitation was established. We further conclude that the jury's decision to convict Bishop of Discharging a Firearm at or into a Habitation is not against the manifest weight of the evidence.
 {¶ 75} Bishop's third, fourth, and fifth assignments of error are overruled.
 IV {¶ 76} All of Bishop's assignments of error having been overruled, the judgment of the trial court is affirmed.
Wolff and Grady, JJ., concur.