OPINION
{¶ 1} Defendant-appellant Cynthia Smith appeals from her conviction and sentence for Aggravated Arson, following a jury trial. Smith contends that her conviction for Aggravated Arson is against the manifest weight of the evidence and is not supported by sufficient evidence, because there is no evidence of an accelerant or an accelerant container and the testimony of Arthur Beal, a neighbor who witnessed Smith go in and out of her house five minutes before he saw smoke coming out of her house, is not credible.
 {¶ 2} Based on the record, we conclude that the jury could reasonably find that evidence of an accelerant and an accelerant container was present and that Beal's testimony was credible. We conclude that the State presented evidence sufficient to establish each element of Aggravated Arson. We further conclude that the jury's decision to convict Smith of Aggravated Arson is not against the manifest weight of the evidence.
 {¶ 3} Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 4} At approximately 9:30 a.m. on May 27, 2003, Cynthia Smith and a friend, Burt Boles, went over to her neighbor's house, Phyllis Dickerson. Around 11:30 a.m., Smith sent Boles back to her house to pick up some papers for her. Boles returned approximately an hour later, and Smith told Dickerson that she had to bring him to Vandalia. Smith then picked up her daughter from school and called Dickerson around 1:30 p.m. to ask her if she would watch her daughter. Smith indicated that she needed to go to her lawyer's office. Smith dropped her daughter off at Dickerson's home around 1:45 p.m.
 {¶ 5} Around 2:00 p.m., Lillian Nawman called 911 when she noticed black smoke rolling out of the upstairs windows of 720 West Pleasant Street, the residence of Smith and her daughter. Although Smith and her daughter resided at 720 West Pleasant Street, Smith was separated from, and in the process of divorcing, her husband and had executed a quit-claim deed transferring the property to her husband one week before the fire. A few minutes after Nawman's 911 call, the Springfield Fire Department arrived to extinguish the fire.
 {¶ 6} Arthur Beal, one of Smith's neighbors, gave a statement to the police that he saw Smith pull up in her truck and go into the house for approximately ten minutes before leaving again. Beal stated that he saw smoke coming out of the house five minutes after Smith left. Smith told the police that she did not go back to her house after taking Boles to Vandalia and picking up her daughter from school. Smith stated that she did not return to her house until she was told of the fire.
 {¶ 7} Smith was subsequently indicted for Aggravated Arson, in violation of R.C. 2909.02(A)(2). This case proceeded to a jury trial, and Smith was found guilty of Aggravated Arson. The trial court sentenced Smith to a two-year prison term and ordered her to pay $39,978 in restitution. From her conviction and sentence, Smith appeals.
 II {¶ 8} In her sole assignment of error, Smith contends that her conviction is against the manifest weight of the evidence and based upon insufficient evidence. Smith was convicted of Aggravated Arson in violation of R.C. 2909.02(A)(2), which provides that "[n]o person, by means of fire or explosion, shall knowingly * * * [c]ause physical harm to any occupied structure."
 {¶ 9} "A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v.Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492:
 {¶ 10} "`An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'
 {¶ 11} "In reviewing a judgment to determine whether it is against the manifest weight of the evidence, an appellate court sits as a `thirteenth juror,' reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v.Thompkins (1997), 78 Ohio St.3d 380, 678 N.E.2d 541." State v.Reed, Champaign App. No. 2002-CA-30, 2003-Ohio-5413, at ¶¶12-14.
 {¶ 12} Smith contends that her conviction for Aggravated Arson is against the manifest weight of the evidence and is not supported by sufficient evidence, because there is no evidence of an accelerant or an accelerant container and Beal's testimony is not credible.
 {¶ 13} We find that there is evidence in the record that an accelerant was used to start the fire. Charles Mansfield, the Captain and Assistant Fire Marshal with the City of Springfield, testified that they determined that the fire originated in the living room. He testified that they cleared the furniture out of the living room and noticed irregular burn patterns in the carpet. Captain Mansfield testified that they rolled the carpet back, cleaned the wood floor underneath, and found remnants of an accelerant pattern left on the floor. Captain Mansfield testified that in his experience and based on the evidence at the scene of the crime, he believed that an accelerant was used to start the fire. Captain Mansfield testified that he had seen this type of accelerant pattern before in his investigations.
 {¶ 14} Nick Heimlich, the Assistant Fire Chief and Fire Marshal for the City of Springfield, testified that the intensity of the fire was extreme, given that the fire department arrived a few minutes after receiving the 911 call and it took them an hour to extinguish the fire. Assistant Fire Chief Heimlich testified that in his opinion, someone was in the house ten to fifteen minutes prior to their arrival and not more than twenty minutes before. Heimlich testified that "for the fire to grow to that level and to that intensity and still survive someone moving in and out of the structure is completely inconsistent with a smoldering fire or a fire that had been developed over time." Heimlich testified that in his opinion, "the fire was exacerbated and caused to become a rapid developing fire." Heimlich testified that the irregular burn pattern on the floor suggests the use of an ignitable liquid because it does not sit in a pool when it is sloshed out, but moves in a variety of areas. Heimlich testified that the burn pattern approached the door which, in his experience, was indicative of someone pouring ignitable liquid in a broadcasting action and backing towards their means of departure. Heimlich testified that they sent a sample of the carpet to the crime lab to determine if an ignitable liquid was present and no fuel source was found. However, Heimlich testified that it is not unusual to find no fuel source and explained as follows:
 {¶ 15} "[I]f the person using the fuel to start the fire is judicious in the use of the fuel, the bulk of that fuel will be consumed as part of igniting the fire. If they are overzealous, if I had used five gallons where the quart would work, the fuel tends to wick under carpet, under cabinets, under other items that would then protect that area detected by sampling of those areas of the structure. And so finding no source or evidence of ignitable liquid does not indicate that there was none used. It just indicates that there was none left for us to determine."
 {¶ 16} Heimlich also testified that it would take only a quarter gallon of fuel, a half gallon at the most, to make the burn patterns that were left on the floor.
 {¶ 17} We find that there is also evidence in the record of an accelerant container. Assistant Fire Chief Heimlich testified that when he was getting the license plate number off of Smith's truck, he noticed plasticized fuel containers in the back of her truck. With Smith's consent, Heimlich searched the back of her truck and found fuel containers labeled kerosene. Heimlich testified that the containers had an odor of kerosene and were empty. Heimlich testified that Smith explained that she carried the fuel in her vehicle because she needed it in her previous employment as a contract driver of trucks.
 {¶ 18} Although Smith told the police that she did not go back to her house after taking Boles to Vandalia and picking up her daughter from school, her neighbor, Arthur Beal, testified that he saw Smith pull up in her truck and go into the house for approximately ten minutes before leaving again. Beal testified that he saw smoke coming out of the house five minutes after Smith left. Phyllis Dickerson testified that Smith dropped her daughter off at her house at 1:45 p.m., and Lillian Nawman testified that she saw the fire at 2:00. Heimlich testified that in his opinion, someone was in the house ten to fifteen minutes prior to their arrival and not more than twenty minutes before. Heimlich testified that in his opinion, "the fire was initiated by human intervention and is inconsistent with any other cause."
 {¶ 19} Although Smith contends that Beal's testimony is not credible, Beal testified that he did not know Smith personally and Heimlich testified that he found Beal's statements about the incident on multiple occasions to be consistent. We find that it was not unreasonable for the jury to find Beal's testimony to be credible.
 {¶ 20} Based on the foregoing testimony, we conclude that the jury could reasonably find that evidence of an accelerant and an accelerant container were present and that Beal's testimony was credible. We conclude that the State presented evidence sufficient to establish each element of Aggravated Arson. We further conclude that the jury's decision to convict Smith of Aggravated Arson is not against the manifest weight of the evidence.
 {¶ 21} Smith's sole assignment of error is overruled.
 III {¶ 22} Smith's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
Grady and Donovan, JJ., concur.