OPINION
{¶ 1} Keison Wilkins was indicted for carrying a concealed weapon, in violation of R.C. 2923.12(A), and having weapons while under disability, in violation of R.C. 2923.13(B), with a one-year firearm specification. A jury trial was held in the Montgomery County Court of Common Pleas on the carrying a concealed weapon charge; the having weapons while under disability charge and the accompanying firearm specification were tried to the bench. On January 6, 2005, the jury acquitted Wilkins of carrying a concealed weapon. On February 25, 2005, the court found Wilkins guilty of having weapons while under disability and of the firearm specification. Wilkins was sentenced to four years of incarceration on the having weapons while under disability charge and to one year of incarceration on the firearm specification, both to be served consecutive to the sentences imposed in another case.
 {¶ 2} Wilkins appeals from his conviction, raising three assignments of error, which we will address in a manner that facilitates our analysis
 {¶ 3} "II. THE TRIAL COURT ERRED IN FINDING APPELLANT GUILTY, AS THE VERDICT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."
 {¶ 4} "III. THE TRIAL COURT ERRED IN FINDING APPELLANT GUILTY, AS THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 5} In his second and third assignments of error, Wilkins claims that his conviction was based on insufficient evidence and was against the manifest weight of the evidence. Due to the interrelatedness of these assignments of error, they will be addressed together.
 {¶ 6} "`[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins,78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541, citing Black's Law Dictionary (6th Ed. 1990) 1433. When reviewing the sufficiency of evidence, the relevant inquiry is whether any rational finder of fact, viewing the evidence in the light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Dennis,79 Ohio St.3d 421, 430, 1997-Ohio-372, 683 N.E.2d 1096, citingJackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed. 2d. 560. A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." Id.
 {¶ 7} In contrast, when a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Thompkins, 78 Ohio St.3d at 387, citing State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288. "Contrastingly, the decision as to which of several competing inferences, suggested by the evidence in the record, should be preferred, is a matter in which an appellate judge is at least equally qualified, by reason and experience, to venture an opinion." Id. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. Martin, 20 Ohio App.3d at 175.
 {¶ 8} According to the state's evidence, on February 22, 2004, Officer Bradley Pearson, a park ranger for Five Rivers Metro Parks, observed a four-door Buick with an expired registration sticker heading southbound on Riverside Drive in Dayton, Ohio. Upon checking the registration through his laptop computer, the registration came back for a 1993 Pontiac. Pearson initiated a traffic stop. When he activated his emergency lights, Pearson observed the front seat passenger lean forward in his seat as though he were shoving something underneath it. The car stopped in the parking lot at 144 East Helena Street. Pearson called for back-up.
 {¶ 9} Pearson approached the car from the passenger side. He explained that he did so because he was concerned that contraband and/or a weapon might have been hidden by the passenger. The officer advised the driver and the passenger as to why he had stopped the vehicle and asked for identification. The driver, Ramone Clark, indicated that she had a suspended license. Pearson directed Clark and her passenger, Wilkins, to remain in the vehicle. He then returned to his cruiser to check the identifications. The check confirmed that Clark had a suspended license. At that time, Officer John Rieder, a park ranger and evidence technician for Five Rivers Metro Parks, arrived. Pearson advised Rieder of the situation and stated that he would be asking the occupants to exit the vehicle. Pearson asked Clark to exit the vehicle and to sit in his cruiser. He then asked Wilkins to exit. After frisking him, Pearson told Wilkins that he was free to leave. Wilkins, however, asked to remain at the scene to see what would happen to Clark.
 {¶ 10} As Pearson completed paperwork related to Clark, Rieder began to complete a tow sheet and conduct a tow inventory of the vehicle, beginning with the front passenger side. Upon peering under the seat, Rieder observed papers, a razor blade, and an assault firearm, which was identified at trial as a Smith Wesson, Model SW-9-VE, 9 millimeter semi-automatic pistol. Rieder advised Pearson that he had located a weapon. Clark and Wilkins were then handcuffed and placed in separate cruisers. Rieder returned to the vehicle, photographed the items under the seat, and secured the weapon. Pearson located and removed the razor blade. Clark indicated that the razor blade belonged to her but denied knowledge of the firearm. Wilkins likewise denied knowledge of the firearm.
 {¶ 11} At trial, Chris Monturo, a firearm and tool mark examiner with the Miami Valley Regional Crime Lab ("MVRCL"), indicated that he received the weapon, a magazine and eleven unfired cartridges from Five Rivers Metro Parks for analysis. He testified that he was able to lift a latent print from the right side of the magazine. Monturo stated that the magazine would have been out of the weapon when the latent print was made. Monturo further testified that he had tested the pistol and that it was operable. Finally, Monturo indicated that production of the weapon at issue began in 1999.
 {¶ 12} Barbara Askins, a latent print examiner with MVRCL, testified that she compared a latent palm print from the magazine against a known inked palm print from Wilkins. She identified ten points on the prints that matched and concluded that the latent print belonged to Wilkins.
 {¶ 13} Finally, Darryl Chatman of the Cincinnati Police Department and Sheree Lovelace of the Ohio Adult Probation Authority both testified that Wilkins had been convicted of aggravated robbery in 1993. Lovelace stated that she began supervising Wilkins in September 2003, and that he continued to be under her supervision in February 2004. Lovelace testified that Wilkins was prohibited from possessing firearms and ammunition under the terms of his probation.
 {¶ 14} On appeal, Wilkins claims that the state presented no evidence that his prints were found on a weapon, arguing that the magazine is not equivalent to a weapon. Moreover, he asserts that the print on the magazine could have been made at any point in time regardless of whether a weapon or ammunition were close at hand.
 {¶ 15} R.C. 2923.13(A)(2) prohibits persons from knowingly acquiring, having, carrying, or using any firearm or dangerous ordnance if the person has been convicted of any felony offense of violence. A firearm is defined as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." R.C. 2923.11.
 {¶ 16} Based on the evidence presented at trial, we have little difficulty finding sufficient evidence to support Wilkin's conviction and that the conviction was not against the manifest weight of the evidence. Pearson testified that he observed Wilkins leaning forward in the vehicle as though he were "shoving something underneath of his seat." Upon looking under the seat on which Wilkins had been sitting, Rieder observed a semi-automatic pistol. Although Wilkins denied any knowledge of the weapon, the latent print found on the magazine inside the gun matched an inked print from Wilkins. Accordingly, the trial court could have reasonably concluded that Wilkins had lied when he denied knowledge of the gun and, further, that Wilkins had had the weapon. Moreover, although neither the firearm nor fingerprint expert could testify as to when the latent print had been left, Monturo testified that the gun at issue was not made until 1999 and that it was an operable firearm capable of firing a projectile under the force of an explosion. Because Wilkins was incarcerated between 1999 and 2003, there was evidence that the latent print could only have been left while Wilkins was not permitted to lawfully have a firearm. Thus, although there is no direct evidence that Wilkins had a firearm, viewed in its entirety, there was significant circumstantial evidence from which the court could have concluded that Wilkins had a weapon while under disability as alleged in the indictment. "Circumstantial evidence and direct evidence inherently possess the same probative value." State v. Jenks (1991),61 Ohio St.3d 259, 272, 574 N.E.2d 492; State v. Reed, Champaign App. No. 2002-CA-30, 2003-Ohio-5413, ¶ 19.
 {¶ 17} Wilkins further asserts that the verdict was against the manifest weight of the evidence, because the trial court's determination was affected by its participation in other criminal proceedings concerning Wilkins. He also emphasizes that a jury acquitted him of carrying a concealed weapon based on the same factual circumstances. Although the record reflects that the trial court was aware of other firearm-related charges against Wilkins, there is no evidence in the record that the court's verdict was affected by that knowledge. Morever, as stated supra, the court could have reasonably rendered a guilty verdict based solely on the evidence presented at trial.
 {¶ 18} Finally, the fact that a jury acquitted Wilkins of carrying a concealed weapon based on the same circumstances does not render the conviction for having weapons while under disability improper. It is well-established that "each count of an indictment charges a complete offense; that the separate counts of an indictment are not interdependent, but are, and necessarily must be, each complete in itself." Browning v.State (1929), 120 Ohio St. 62, 71, 165 N.E. 566; State v.Lovejoy (1997), 79 Ohio St.3d 440, 683 N.E.2d 1112. InLovejoy, the Supreme Court of Ohio reiterated that "an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count." 79 Ohio St.3d at 446;State v. Brown (1984), 12 Ohio St.3d 147, 465 N.E.2d 889
(holding that the jury's finding that the defendant was insane as to two charges but sane as to the others did not require reversal of the convictions.); State v. Adams (1978), 53 Ohio St.2d 223. Here, the differing verdicts relate to different counts in the indictment and do not arise out of inconsistent responses to the same count. Accordingly, the verdicts are not inconsistent and the jury's verdict on the carrying a concealed weapons count does not warrant reversal of the conviction for having weapons while under disability.
 {¶ 19} The second and third assignments of error are overruled.
 {¶ 20} "I. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."
 {¶ 21} In his first assignment of error, Wilkins claims that his trial counsel rendered ineffective assistance. First, Wilkins asserts that his trial attorney was ineffective because he failed to cross-examine the state's experts regarding the lifting and matching of his palm print. Second, Wilkins claims that his counsel failed to preserve his objection to the admissibility of Askins' testimony by failing to object at trial. Wilkins's counsel had filed a motion in limine to exclude the fingerprint evidence due to the state's failure to provide discovery. The trial court had overruled the motion, and Wilkins's counsel failed to renew his objection at trial.
 {¶ 22} In order to demonstrate ineffective assistance of counsel, Wilkins must establish that his counsel's representation fell below an objective standard of reasonableness and that he has been prejudiced by his counsel's deficient performance.Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373. To warrant reversal, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland,466 U.S at 694; Bradley, 42 Ohio St.3d at 142.
 {¶ 23} Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. See Strickland, 466 U.S. at 689. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. Id.; State v.Parker, Montgomery App. No. 19486, 2003-Ohio-4326, ¶ 13.
 {¶ 24} Upon review, we find no basis to conclude that the conduct of Wilkins's trial counsel fell below an objective standard of reasonableness. As noted by the state, Wilkins's attorney argued at trial that the state would be unable to prove that Wilkins knowingly possessed the gun or had it readily at hand. Counsel further argued that the presence of the palm print on the magazine did not lead to the conclusion that he had possessed the gun. Wilkins's counsel elicited testimony from Monturo and Askins that they were unable to determine the age of the print. Reviewing the record as a whole, it is apparent that Wilkins's counsel's failure to challenge Askins's print identification — by renewing his objection to its admissibility or by cross-examination — was a matter of trial strategy. Moreover, in light of the fact that the jury acquitted Wilkins of carrying a concealed weapon, that strategy was not only reasonable but, at least in part, successful.
 {¶ 25} Furthermore, counsel's motion in limine was unlikely to have been sustained if it had been renewed at trial. The motion was based on the state's failure to provide timely discovery of the fingerprint evidence, but defense counsel conceded in his motion that the evidence had not been made available to the prosecutor as of the time the motion in limine was filed. Thus, the prosecutor's nondisclosure of the fingerprint evidence was not willful. Additionally, Wilkins has not demonstrated that earlier disclosure would have benefitted him in preparing his defense or that he was prejudiced by the late disclosure. See State v. Joseph (1995), 73 Ohio St.3d 450,458, 653 N.E.2d 285. Accordingly, we cannot conclude that there was a reasonable probability that, but for counsel's alleged unprofessional errors, the result of Wilkins's bench trial would have been different.
 {¶ 26} The first assignment of error is overruled.
 {¶ 27} The judgment of the trial court will be affirmed.
Grady, P.J. and Brogan, J., concur.